1 | Robert R. Hager, NV State Bar No. 1482
Treva J. Hearne, NV State Bar No. 4450
2 | HAGER & HEARNE
245 E. Liberty - Suite 110
3 | Reno, Nevada 89501
Tel: (775) 329-5811
4 | Fax: (775) 329-5819

5 | *Counsel for Plaintiffs*

6 |

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

ALETA ROSE GOODWIN, ROBERT PAUL
MCARTOR, LISA CHENEY and DARRIN
CHENEY, HEATHER GABEL,
and FREDRICK TULIP, LINDA R. BARBA,
JOAQUIN AREVALO, DANIEL F. COSLOW,
ROSA M. DIAZ and SERGIO DIAZ, PAMELA
HORTON, VICTOR PARECE, CODY PREMO,
GEORGE W. PREMO, III, TONYA DAWN
MULL, fka TONYA DAWN ROBINSON,
JAMES SANDBORN, CYNTHIA FLAGG and
CHARLES FLAGG, JANICE GANNON,
WILLIAM DAN KLUTTZ, BRIAN E. JONES,
JOAN BLAKE and RONNIE MCKINNEY,
JAMES H. MULLENNIX and JEANNE K.
MULLENNIX, HEATHER MONAHAN and
GEORGE R. MORENO, TRAVIS RAWLINGS
and SYLVIA RAWLINGS, JOHN SULLIVAN
and DEBBIE SULLIVAN, SIGNE STEHMAN,
JOSEPH E. THURSTON and ARLENE
THURSTON, JESUS TOVAR,  and JOHN F.
WILBURN and ROSALIE L. WILBURN,
individually and on behalf of a class of similarly
situated individuals,

                Plaintiffs,

vs.

EXECUTIVE TRUSTEE SERVICES, LLC;
COUNTRYWIDE HOME LOANS, INC., a New
York corporation; MERSCORP, INC., a Virginia
corporation; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., a subsidiary
of MERSCORP, Inc., a Delaware  corporation;
RECONTRUST COMPANY,  SAXON
MORTGAGE SERVICES, INC.,  T.D.
SERVICE COMPANY, DEUTSCHE BANK
NATIONAL TRUST COMPANY,  OCWEN

Case No.:  3:09-cv-00306-ECR

### SECOND AMENDED
### CLASS ACTION COMPLAINT

1.  **Fraud in the Inducement**

2.  **Unjust Enrichment**

3.  **Wrongful Foreclosure**

4.  **Slander of Title**

5.  **Wrongful Filing of Unlawful Detainer**

6.  **Conspiracy to Commit Fraud Related to MERS System**

7.  **Conspiracy to Commit Wrongful Foreclosure Related to the MERS System**

8.  **Injunctive Relief**

9. **Declaratory Relief**

1  LOAN SERVICING, LLC, WESTERN
   PROGRESSIVE, LLC., AHMSI DEFAULT
2  SERVICES, INC., QUALITY LOAN SERVICE
   CORPORATION, NATIONAL DEFAULT
3  SERVICING CORPORATION,  AZTEC
   FORECLOSURE CORPORATION, BANK OF
4  NEW YORK, as successor to J.P. Morgan Chase
   Bank, N.A., as Trustee for BSALTA 2005-1;
5  OLD REPUBLIC DEFAULT MANAGEMENT
   SERVICES, a division of Old Republic National
6  Title Insurance Company, LITTON LOAN
   SERVICING, L.P.; FEDERAL HOME LOAN
7  MORTGAGE CORPORATION, a Virginia
   corporation; FEDERAL NATIONAL
8  MORTGAGE ASSOCIATION, a District of
   Columbia corporation; GMAC MORTGAGE,
9  L.L.C., a Delaware corporation; NATIONAL
   CITY  MORTGAGE, a foreign company and a
10 division of NATIONAL CITY BANK, a
   subsidiary of National City Corporation;
11 NATIONAL CITY CORPORATION,  a
   Delaware corporation and a subsidiary of PNC
12 Financial Services, Inc.; NATIONAL CITY
   BANK; PNC FINANCIAL SERVICES, INC., a
13 Pennsylvania corporation; J.P. MORGAN
   CHASE BANK, N.A., a New York corporation;
14 CITIMORTGAGE, INC., a New York
   corporation; HSBC BANK, U.S.A., HSBC
15 MORTGAGE CORPORATION, U.S.A., a
   Delaware corporation; UNITED GUARANTY
16 CORPORATION, a foreign corporation;
   WELLS FARGO BANK, N.A., a California
17 corporation, dba WELLS FARGO HOME
   EQUITY and dba WELLS FARGO HOME
18 MORTGAGE, a division of WELLS FARGO
   BANK, N.A., a California corporation; BANK
19 OF AMERICA, N.A., a Delaware corporation,
   GE MONEY BANK, an Ohio corporation;
20 WMC MORTGAGE CORP.; IB PROPERTY
   HOLDINGS, L.L.C., and  MTC FINANCIAL,
   INC., dba TRUSTEE CORPS.,

21            Defendants.

22

23        Plaintiffs ALETA ROSE GOODWIN, ROBERT PAUL MCARTOR, LISA CHENEY and

24 DARRIN CHENEY, and HEATHER GABEL, individually and on behalf of a class of similarly

25 situated individuals whose homes have been foreclosed upon and purchased by the defendant

banks with the Defendant banks retaining the homes (hereinafter "bank REO Plaintiffs"); and FREDRICK TULIP, individually and on behalf of a class of similarly situated individuals whose homes were foreclosed upon and sold to a subsequent purchaser and who now seek damages for the wrongful foreclosure and loss of their homes; and LINDA BARBA, JOAQUIN AREVALO, DANIEL F. COSLOW, ROSA M. DIAZ, SERGIO DIAZ, PAMELA HORTON, VICTOR PARECE, CODY PREMO, GEORGE W. PREMO, III, TONYA DAWN MULL, fka TONYA DAWN ROBINSON,  JAMES SANDBORN, CYNTHIA and CHARLES J. FLAGG, JANICE M. GANNON, WILLIAM DAN KLUTTZ, BRIAN E. JONES, JOAN BLAKE and RONNIE MCKINNEY, JAMES H. MULLENNIX and JEANNE K. MULLENNIX, HEATHER MONAHAN and GEORGE R. MORENO, TRAVIS RAWLINGS and SYLVIA RAWLINGS, SIGNE STEHMAN, JOHN SULLIVAN and DEBBIE SULLIVAN, JOSEPH E. THURSTON and ARLENE THURSTON, JESUS TOVAR, JOHN F. WILBURN, and ROSALIE L. WILBURN, Plaintiffs who seek a temporary restraining order and preliminary injunction against imminent foreclosure sales of their homes against Defendants,  and who seek other relief as alleged herein, on behalf of themselves and others similarly situated, through their counsel, HAGER & HEARNE, allege as follows:

<u>STATEMENT OF THE CASE</u>

This case arises because the Plaintiffs were the victims of unlawful foreclosures because the Defendants have foreclosed on the Plaintiffs' homes or threaten in the near future to foreclose on the homes of the Plaintiffs.  These foreclosures were, and are, based upon a deed of trust and note that are no longer held by the same entity or party and are based upon deeds of trust that were flawed at the date of origination of the loan because Mortgage Electronic Registration Service (MERS) or a loan company of MERS was named as the beneficiary or nominee of the lender on

the deeds of trust.  Further, certain of the Plaintiffs' loans were made in violation of state law.  The Defendants have attempted to foreclose and have actually foreclosed when they do not have a lawful right to foreclose.

The bank REO Plaintiffs have been subjected to unlawful foreclosure of their primary residences and bring this action for emergency injunctive relief to enjoin the Defendants who purport to have acquired title at foreclosure sales on MERS and/or MERS member Deeds of Trust from transferring the property.  Plaintiffs seek damages for the known unlawful foreclosure by Defendants on those Deeds of Trust, which were rendered unsecured as a result of splitting the note from the deed of trust by naming MERS as the "beneficiary."  The Plaintiffs who have been wrongfully foreclosed upon and title to whose primary residences is now alleged to be held by a bona fide purchaser seek damages for the knowing unlawful foreclosure of their homes.  All of the remainder of the Plaintiffs are at imminent risk of losing their homes because one or more of the Defendants has served upon them notices of foreclosure or notices of default and election to sell, and those Plaintiffs hereby seek emergency injunctive relief and damages.   The Plaintiffs bring this action on behalf of themselves and all other persons similarly situated whose homes have been unlawfully foreclosed upon by Defendants on MERS and/or MERS member Deeds of Trust, each such foreclosure having been commenced and advanced in furtherance of the conspiracy pursuant to which every Defendant herein aided and abetted, and/or participated with and/or conspired with the other named Defendants in the wrongful course of conduct or otherwise caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences and events alleged in this Complaint.

<u>JURISDICTION</u>

1.      This court has jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship, as Plaintiffs are residents of the State of Nevada; Defendant Countrywide Home Loans, Inc. is a New York corporation; upon information and belief Defendants Deutsche Bank National Trust Company, Ocwen Loan Servicing LLC, Western Progressive LLC, AHMSI Default Services, Inc., Quality Loan Service Corporation, Aztec Foreclosure Corporation, Bank of New York, and Old Republic Default Management Services, are all foreign corporations, Defendant MERSCORP, Inc. is a Virginia corporation, and its subsidiary, Defendant Mortgage Electronic Registration Systems, Inc. is a Delaware corporation; and Defendants Executive Trustee Services, LLC; Recontrust Company, N.A.; Saxon Mortgage Services, Inc.;  T.D. Service Company; National Default Servicing Corporation; Federal Home Loan Mortgage Corporation; Federal National Mortgage Association; GMAC Mortgage, L.L.C.; National City Mortgage; National City Corporation; PNC Financial Services, Inc.; J.P. Morgan Chase Bank, N.A.; CitiMortgage, Inc.; HSBC Bank, U.S.A.; HSBC Mortgage Corporation, U.S.A.; Bank of America, N.A.; United Guaranty Corporation; Wells Fargo Bank, N.A. dba Wells Fargo Home Equity; Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.; GE Money Bank; IB Property Holdings, L.L.C.; and MTC Financial, Inc. dba Trustee Corp. are foreign corporations, and because this matter is a class action with claims having a value in excess of $5,000,000.00.

2.      This Court has pendent jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue over this matter is appropriate in this Court pursuant to 28 U.S.C. § 1391(b). The acts complained of occurred, in substantial part, in the State of Nevada, the properties subject to this action are situated in the State of Nevada in the Northern Division of the District of Nevada,

the owners of the property reside in Nevada, and, at all relevant times material hereto, the

Defendants are or were doing business in Nevada.

Parties and Standing

4.     Plaintiff, Aleta Rose Goodwin, is a resident of Washoe County, Nevada.

5.     At all times relevant and material hereto, Plaintiff Goodwin maintained Plaintiff's

primary residence in Washoe County, Nevada with the legal description of:

> LOT 126 IN BLOCK B OF VILLAGES @ DAMONTE RANCH – UNIT 16A,
> ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE
> COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON
> JULY 23, 2003, AS FILE NO. 2891784, AS TRACT MAP NO. 4241 AND
> AMENDED BY CERTIFICATE OF AMENDMENT RECORDED MARCH 31,
> 2004, AS DOCUMENT NO. 3015394.
> APN 140-352-08

Plaintiff's primary residence as described above is commonly referred to and located at

2281 Rio Lobo Lane, Reno, Nevada 89521.

6.     Plaintiff Robert Paul McArtor is a resident of Washoe County, Nevada.

7.     At all times relevant and material hereto, Plaintiff McArtor maintained a primary

residence in Washoe County, Nevada with the legal description of:

> LOT 3 IN BLOCK 4 OF WESTERLY ADDITION NO. E TO GREENBRAE
> TERRACE SUBDIVISION, SPARKS, NEVADA, ACCORDING TO THE MAP
> THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF
> WASHOE COUNTY, STATE OF NEVADA, ON FEBRUARY 6, 1958, AS
> TRACT MAP NO. 577.
> APN 027-311-40

Plaintiff's primary residence as described above is commonly referred to and located at

1120 Vance Way, Sparks, Nevada 89431.

8.     Plaintiff, Heather Gabel, is a resident of Washoe County, Nevada.

9.     At all times relevant and material hereto, Plaintiff Heather Gabel had a primary

residence in Washoe County, Nevada with the legal description of:

Lot 1 in Block F of Eagle Canyon II Unit 1, recorded July 17, 2001 as Document
No. 2575401, Official Records of Washoe County, Nevada, as Tract Map No.
3986
APN 530-521-04.

Plaintiff's primary residence as described above is commonly referred to and located at

1447 Kinglet Dr., Sparks, NV 89441.

10.     Plaintiff, Fredrick Tulip, is a resident of Douglas County, Nevada.

11.     At all times relevant and material hereto, Plaintiff Tulip maintained Plaintiff's

primary residence in Douglas County, Nevada with the legal description of:

LOT 580 OF GARDNERVILLE RANCHOS #6 SUBDIVISION, ACCORDING
TO THE MAP THEREOF NO. 66512, FILED IN THE OFFICE OF THE
COUNTY RECORDER OF DOUGLAS COUNTY, STATE OF NEVADA.
APN 1220-22-210-162

Plaintiff's primary residence as described above is commonly referred to

and located at 659 Bowles Lane, Gardnerville, Nevada 89460.

12.     Plaintiff, Linda R. Barba, is a resident of Lyon County, Nevada.

13.     At all times relevant and material hereto, Plaintiff Barba maintained Plaintiff's

primary residence in Lyon County, Nevada with the legal description of:

LOT 33 OF TRUCKEE RIVER RANCH PHASE 2, FILED IN THE OFFICE OF
THE COUNTY RECORDER OF LYON COUNTY, NEVADA, ON MARCH 27,
2006, AS DOCUMENT NO. 378181, OFFICIAL RECORDS.
APN 022-424-10

Plaintiff's primary residence as described above is commonly referred to

and located at 3010 Beaverhead Lane, Fernley, Nevada 89408.

14.     Plaintiff, Joaquin Arevalo, is a resident of Washoe County Nevada.

15.     At all times relevant and material hereto, Plaintiff Arevalo maintained Plaintiff's

primary residence in Washoe County with the legal description of:

1
2
3

LOT 365, OF THE "NORTHSTAR RANCH PHASE 3", ACCORDING TO THE OFFICIAL MAP THEREOF, FILED IN THE OFFICE OF RECORDER OF WASHOE COUNTY, NEVADA, ON JUNE 29, 2005, DOCUMENT NO. 3238752, TRACK MAP NO. 4514.
APN 502-582-01

4

Plaintiff's primary residence as described above is commonly referred to and located at

5

8389 Opal Ranch Way, Reno, Nevada 89506.

6

16.     Plaintiffs, Lisa Cheney and Darrin Cheney, are residents of Churchill County,

7

Nevada.

8
9

17.     At all times material hereto, Plaintiffs Cheney maintained their primary residence

which is legally described as:

10
11
12
13

LOT 6 OF THE LINDA VISTA SUBDIVISION AS DELINEATED ON THE OFFICIAL PLAT THEREOF RECORDED MARCH 14, 1956 IN THE OFFICE OF THE COUNTY RECORDER OF CHURCHILL COUNTY, UNDER DOCUMENT NO. 84335, OFFICIAL RECORDS, CHURCHILL COUNTY, NEVADA
APN 10-153-04

14

Plaintiffs' primary residence described above is commonly referred to and located at 2875

15

Phritzie Lane, Fallon, Nevada 89405.

16

18.     Plaintiff, Daniel F. Coslow, is a resident of Washoe County, Nevada.

17
18

19.     At all times relevant and material hereto, Plaintiff Coslow maintained Plaintiff's

primary resident in Washoe County with the legal description of:

19
20
21

All that certain real property situate in a portion of the south one half (S ½) of the southwest one quarter (SW ¼) of the southeast one-quarter (1/4) of section eighteen  (18), township twenty (20) north, range twenty (20) east, Mount Diablo Meridian, Washoe County, Nevada, Being described as follows:

22
23
24
25

Commencing at the one-quarter corner (1/4) common to sections 18 and 19, as shown on that certain record of survey map no. 87, file no. 165105 in the bearing of the Washoe county recorder, said survey being the basis of bearing for this description;
Thence North 89°28'49" East, 668.68 feet;
Thence North 00°02'39" East, 30.00 feet to the northerly line of Fifth Avenue;

Thence along said northerly line north 89°28'49" East 209.61 feet to the point of
beginning;
Thence North 27°1616'58" West 62.18 feet;
Thence North 00°31'11" West 55.00 feet;
Thence North 89°28'49" East 31.10 feet;
Thence South 88°48'01" East, 122.73 feet;
Thence South 00°02'52" West 106.84 feet to the above mentioned northerly line
of Fifth Avenue;
Thence, along said northerly line South 89°28'49" West, 124.72 feet to the above
described point of beginning.

Reference is hereby made of record to that certain record of survey no. 2413, lot
6, filed April 21, 1992, as document no. 1564308, official records.

Note:  The above metes and bounds description appeared previously in that
certain document recorded June 16, 1995, in book 4323, page 911, as instrument
no. 1901400.
APN 08583025.

Plaintiff's primary residence as described above is commonly referred to and located at 165

East 5th Ave., Sun Valley, NV  89433.

20.     Plaintiffs, Rosa M. Diaz and Sergio Diaz, are residents of Washoe County, Nevada.

21.     At all times relevant and material hereto, Plaintiffs Diaz maintained Plaintiffs'

primary resident in Washoe County with the legal description of:

Lot 8-38 as shown on the Map of the Foothills at Wingfield Village, 8A, Tract
Map 4507, filed in the office of the County Recorder of Washoe County, State of
Nevada on June 27, 2005 as File No.          3236769 of Official Records
APN 526-281-02

Plaintiffs' primary residence as described above is commonly referred to and located at

7186 Truth Drive, Sparks, NV  89436.

22.     Plaintiff, Pamela Horton, is a resident of Douglas County, Nevada.

23.     At all times relevant and material hereto, Plaintiff Horton maintained Plaintiff's

primary resident in Douglas  County with the legal description of:

1
2

BEING A PORTION OF THE NORTH ONE-HALF OF SECTION 12,
TOWNSHIP 12 NORTH, RANGE 20 EAST. M.D.B. & M., FURTHER
DESCRIBED AS FOLLOWS:

3
4
5
6

LOT 25 IN BLOCK F, AS SET FORTH ON THE FINAL SUBDIVISION MAP
2DA# #01-083 FOR PINON RIDGE, FILED FOR RECORD IN THE OFFICE
OF THE COUNTY RECORDER OF DOUGLAS COUNTY, STATE OF
NEVADA ON SETPEMBER 15, 2003 IN BOOK 0903, PAGE 7332 AS
DOCUMENT NO. 589938.
APN 1220-12-610-010

7

Plaintiff's primary residence as described above is commonly referred to and located at

8

1112 Cortez Lane, Gardnerville, NV  89410.

9

24.      Plaintiff, Victor Parece, is a resident of Washoe County, Nevada.

10

25.      At all times relevant and material hereto, Plaintiff Parece maintained Plaintiff's

11

primary residence in Washoe County with the legal description of:

12
13
14

LOT 8 OF GEMSTONE SUBDIVISION, ACCORDING TO THE MAP
THEREOF NO. 3578, FILED IN THE OFFICE OF THE COUNTY RECORDER
OF WASHOE COUNTY, STATE OF NEVADA, ON JULY 22, 1998, AS FILE
NO. 2233866 OF OFFICIAL RECORDS.
APN 504-742-16

15

Plaintiff's primary residence as described above is commonly referred to and located at 199

16

Alexandrite Ct., Sun Valley, Nevada  89433.

17

26.      Plaintiffs, Cody Premo and George W. Premo, III, are residents of Washoe County,

18

Nevada.

19

27.      At all times relevant and material hereto, Plaintiffs Premo maintained Plaintiffs'

20

primary residence in Washoe County with the legal description of:

21
22
23

Lot 19 of DESERT HIGHLANDS UNIT 4D, as according to the map thereof,
filed in the office of the County Recorder of Washoe County, State of Nevada, on
October 22, 1999, under Filing No. 2391483, and as Tract Map No. 3767.
APN 514-331-03

24
25

1    Plaintiffs' primary residence as described above is commonly referred to and located at

2    3971 Burlington Dr., Sparks, Nevada 89436-7606.

3    28.    Plaintiff, Tonya Dawn Mull, fka Tonya Dawn Robinson, is a resident of Washoe

4    County, Nevada.

5    29.    At all times relevant and material hereto, Plaintiff Mull maintained Plaintiff's

6    primary residence in Washoe  County with the legal description of:

7    All that certain real property situate in the City of Sparks, County of Washoe, State of

8    Nevada, described as follows:

9

10   Lot 309, in Block B of the PAGNI RANCH-UNIT THREE, according to the map
     thereof, filed in the office of the County Recorder of Washoe County, State of
11   Nevada, on September 17, 1993, as File No. 1713113, and Tract Map No. 2974.
     APN 030-631-09.
12

13   Plaintiff's primary residence as described above is commonly referred to and located at 985

14   Country Ridge Drive, Sparks, NV  89434.

15   30.    Plaintiff, James Sandborn, is a resident of Washoe County, Nevada.

16   31.    At all times relevant and material hereto, Plaintiff Sandborn maintained Plaintiff's

17   primary residence in Washoe County with the legal description of:

18   The land referred to herein is situated in the State of Nevada, County of Washoe, City of

19   Reno, and is described as follows:

20

21   LOT 123, AS SHOWN ON THE OFFICIAL MAP OF "THE CREST AT
     STONEFIELD PHASE 1 UNIT 3", FILED IN THE OFFICE OF THE
22   RECORDER OF WASHOE COUNTY, NEVADA, ON SEPTEMBER 6, 2005
     AS FILE NO. 3272788, TRACT MAP NO. 4540.
23   APN 080-891-03

     Plaintiff's primary residence as described above is commonly referred to and located at
24
     8911 Finnsech Drive, Reno, Nevada  89506.
25

1    32.    Plaintiffs, Cynthia and Charles Flagg, are residents of Washoe County, Nevada.

2    33.    At all times relevant and material hereto, Plaintiffs Flagg maintained Plaintiffs'

3    primary residence in Washoe County, Nevada with the legal description of:

4    LOT 31, OF THE OFFICIAL PLAT OF DESERT HIGHLANDS UNIT 3, A
     PLANNED DEVELOPMENT, ACCORDING TO THE MAP THEREOF, FILED
5    IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY,
     STATE OF NEVADA ON APRIL 17, 1998, AS FILE NO. 2201028, AS TRACT
6    MAP NO. 3520, OFFICIAL RECORDS.
     APN 514-300-33
7

8    Plaintiffs' primary residence as described above is commonly referred to and located at

9    2278 Desert Cove Ct., Sparks, Nevada  89436.

10    34.    Plaintiff, Janice Gannon, is a resident of Washoe County, Nevada.

11    35.    At all times relevant and material hereto, Plaintiff Gannon maintained Plaintiff's

12    primary residence in Washoe County, Nevada with the legal description of:

13    LOT 32 IN BLOCK H OF TWIN LAKE ESTATES NO.1, ACCORDING TO
     THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY
14    RECORDER OF WASHOE COUNTY, STATE OF NEVADA ON FEBRUARY
     28, 1966 UNDER FILE NO. 53836, AND TRACT MAP NO. 993.
15    APN 023-171-09

16    Plaintiff's primary residence as described above is commonly referred to and located at

17    3965 Skyline Blvd., Reno, Nevada 89509.

18    36.    Plaintiff, William Dan Kluttz, is a resident of Washoe County, Nevada.

19    37.    At all times relevant and material hereto, Plaintiff Kluttz maintained Plaintiff's

20    primary residence in Washoe County, Nevada with the legal description of:

21

22    LOT 23, AS SHOWN ON THE OFFICIAL MAP OF "EAGLE CANYON IV –
     UNIT 1". FILED IN THE OFFICE OF THE RECORDER OF WASHOE
23    COUNTY, NEVADA, ON MAY 24, 2005 AS FILE NO. 3218680, TRACT MAP
     NO. 4485.
24    APN 532-052-01

25

1    Plaintiff's primary residence as described above is commonly referred to and located at

2    1263 Bellatrix Way, Sparks, Nevada  89441.

3        38.    Plaintiffs, Joan Blake and Ronnie McKinney, are residents of Washoe County,

4    Nevada.

5

6        39.    At all times relevant and material hereto, Plaintiffs Blake and McKinney

7    maintained Plaintiffs' primary residence in Washoe County, Nevada with the legal description of:

8        LOT 14 OF EAGLE CANYON III-UNIT 1A, RECORDED FEBRUARY 12,
         2002, OFFICIAL RECORDS, WASHOE COUNTY, NEVADA, AS
9        DOCUMENT NO. 2651511, TRACT MAP NO. 4051.
         APN 530-643-01.
10
         Plaintiffs' primary residence described above is commonly referred to and located at 2283
11
     Ruddy Way, Sparks, Nevada 89436.
12
         40.    Plaintiffs, James H. Mullennix and Jeanne K. Mullennix,  are  residents of Washoe
13
     County, Nevada.
14

15       41.    At all times relevant and material hereto, Plaintiffs Mullennix maintained Plaintiffs'

16   mother (in-law)'s primary residence in Washoe County, Nevada with the legal description of:

17       LOT 464 EAGLE CANYON III – UNIT 5, ACCORDING TO THE MAP
         THEREOF, FILED JULY 28, 2004, AS DOCUMENT NO. 3075229 IN THE
18       OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF
         NEVADA, AS SUBDIVISION TRACT MAP NO. 4370, OFFICIAL RECORDS.
19
         Plaintiffs' mother (in-law)'s primary residence as described above is commonly referred to
20
     and located at 2235 Lenticular Drive, Sparks, Nevada.
21
         42.    At all times material hereto, Plaintiffs Mullennix maintained their primary
22
     residence with the legal description of:
23
24       LOT 23 OF BLOCK X, OF EAGLE CANYON SUBDIVISION-UNIT 4, A
         COMMON INTEREST COMMUNITY, ACCORDING TO THE MAP
25       THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF

1    WASHOE COUNTY, STATE OF NEVADA, ON JUNE 30, 1999, AS FILE NO.
     2357336, AND TRACT MAP NO. 3720.
2    APN:  530-444-12

3    The Mullennix residence as described above is commonly referred to and located at 40

4    White Dove Court, Sparks, Nevada.

5            43.     Plaintiffs, Heather Monahan and George R. Moreno, are residents of Washoe

6    County, Nevada.

7            44.     At all times relevant and material hereto, Plaintiffs Monahan and Moreno

8    maintained Plaintiffs' primary residence in Washoe County, Nevada with the legal description of:

9
     ALL THAT CERTAIN REAL PROPERTY SITUATE IN THE CITY OF
10   SPARKS, COUNTY OF WASHOE, STATE OF NEVADA, DESCRIBED AS
     FOLLOWS:
11

12   LOT 25 OF SKY RIDGE UNIT 1 A PLANNED DEVELOMENT,
     ACCORDING TO THE MAP THEREOF, FILED IN THE FOFICE OF THE
13   OCUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON
     DECEMBER 30, 2003, AS FILE NO. 2974976, TRACT MAP NO. 4287.
14   APN 514-531-03

15   Plaintiffs' primary residence as described above is commonly referred to and located at

16   1743 Cloud Peak Drive, Sparks, Nevada 89436.

17           45.     Plaintiffs, Travis and Sylvia Rawlings, are residents of Washoe County, Nevada.

18           46.     At all times relevant and material hereto, Plaintiffs Rawlings maintained Plaintiffs'

19   primary residence in Washoe County, Nevada with the legal description of:

20   Lot 206, of VILLAGES AT DAMONTE RANCH-UNIT 18B, according to a map
21   thereof, filed in the Office of the County Recorder of Washoe County, State of
     Nevada, on July 14, 2004 as File No. 3067751, also being Subdivision Tract Map
22   4368.

23   Plaintiffs' primary residence as described above is commonly referred to and located at

24   2330 Copper Springs Drive, Reno, Nevada 89521.

25           47.     Plaintiffs, John and Debbie Sullivan, are residents of Carson City County, Nevada.

48.     At all times relevant and material hereto, Plaintiffs Sullivan maintained Plaintiffs' primary residence in Carson City County, Nevada with the legal description of:

PARCEL A OF PARCEL MAP NO. 737 FOR ROBERT L. AND CATHY V. WEISE, FILED IN THE OFFICE OF THE CARSON CITY RECORDER, STATE OF NEVADA, ON APRIL 24, 1979 AS FILE NO. 87388. APN NO. 007-164-04

Plaintiffs' primary residence as described above is commonly referred to and located at 3799 Meadow Wood Road, Carson City, Nevada 89703.

49.     Signe Stehman is a resident of Washoe County, Nevada.

50.     At all times relevant and material hereto, Plaintiff Signe Stehman maintained Plaintiff's primary residence in Washoe County, Nevada with the legal description of:

All that certain real property situate in the County of Washoe, State of Nevada, described as follows:

Lot 22 in Block 8 according to the map of "SKY RANCH UNIT NO. I-A", Subdivision-Tract Map No. 1891 filed in the office of the County Recorder of Washoe County, Nevada, on October 16, 1979, File No. 636073. APN 534-064-23

Plaintiff's primary residence described above is commonly referred to and located at 335 Leo Drive, Sparks, Nevada 89436.

51.     Plaintiffs, Joseph E. Thurston and Arlene D. Thurston, are residents of Douglas County, Nevada.

52.     At all times relevant and material hereto, Plaintiffs Thurston maintained Plaintiffs' primary residence in Douglas County, Nevada with the legal description of:

LOT: 126 BLK: G SUBD: SARATOGA SPRINGS EST #5 SEC/TWN/RNG/ MER: SEC 28 TWN 14N RNG 20E MAP REF 492337 APN 1420-28-311

1    Plaintiffs' primary residence as described above is commonly referred to and located at

2    2830 La Cresta Cr., Minden, Nevada 89423.

3         53.    Plaintiff, Jesus Tovar, is a resident of Washoe County, Nevada.

4         54.    At all times relevant and material hereto, Plaintiff Tovar maintained Plaintiff's

5    primary residence in Washoe County, Nevada with the legal description of:

6
7    LOT 13 OF DONNER SPRINGS SUBDIVISION UNIT NO. 2-B, ACCORDING
     TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY
     RECORDER OF WASHOE COUNTY, STATE OFNEVADA, ON JUNE 8,
8    1976, AS        DOCUMENT NO. 411672, AND AS TRACT MAP NO. 1578.
     APN 021-244-26
9

10        Plaintiff's primary residence as described above is commonly referred to and located at

11   4240 Mira Loma Drive, Reno, Nevada 89502.

12        55.    Plaintiffs, John F. Wilburn and Rosalie L. Wilburn, are residents of Washoe

13   County, Nevada.

14        56.    At all times relevant and material hereto, Plaintiffs Wilburn maintained Plaintiffs'

15   primary residence in Washoe County, Nevada with the legal description of:

16
17   ALL THAT CERTAIN REAL PROPERTY SITUATE IN THE COUNTY OF
     WASHOE, STATE OF NEVADA, DESCRIBED AS FOLLOWS:
     LOT 4 IN BLOCK A, OF VISTA HEIGHTS NORTH PHASE 1, ACCORDING
18   TO THE MAP THEROF, FILED IN THE OFFICE OF THE COUNTY
     RECORDER OF WASHOE COUNTY, NEVADA, ON NOVEMBER 24, 1992,
19   AS DOCUMENT NO. 1625322 AND AS TRACT MAP NO. 2903.
     APN 518-123-02.
20        Plaintiffs' primary residence as described above is commonly referred to and located at

21   2165 stone View Dr., Sparks, Nevada 89436.
22

23        57.    Plaintiff, Brian E. Jones, is a resident of Washoe County, Nevada.

24        58.    At all times relevant and material hereto, Plaintiff Jones maintained Plaintiff's

25   primary residence in Washoe County, Nevada with the legal description of:

LOT 20 OF NORTHERN LIGHTS SUBDIVISION – UNIT 6, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON JUNE 8, 2004, UNDER FILING NO. 3050030, AND AS TRACT MAP NO. 4351, OFFICIAL RECORDS.
APN 502-341-11

Plaintiff's primary residence as described above is commonly referred to and located at 5088 Coggins Rd. Reno, Nevada 89506.

59.     Upon information and belief, Defendant Executive Trustee Services, LLC (hereinafter "ETS") is a wholly owned subsidiary of GMAC and is a foreign limited liability corporation authorized to do business in, and doing business in, Washoe County, Nevada, and at all times material hereto was a member of the MERS system described herein and a shareholder in MERS.

60.     Upon information and belief, Defendant MERSCORP, INC. was a Virginia corporation and doing business in the State of Nevada through its division or subsidiary, Defendant Mortgage Electronic Registration Systems, Inc. ("MERS, Inc."), a Delaware corporation.  Upon information and belief, MERSCORP, INC., was a director of MERS, INC. Defendants MERSCORP, INC., and MERS, Inc. are hereinafter collectively referred to as "MERS."

61.     Upon information and belief, Recontrust Company is a foreign corporation not registered to do business in the State of Nevada, but is the company that forecloses for Countrywide Home Loans, Inc., and Defendant Recontrust is a wholly owned subsidiary of Defendant Countrywide Home Loans, Inc.

62.     Upon information and belief, Saxon Mortgage Services, Inc., is a foreign corporation registered to do business in the State of Nevada, and, upon information and belief, is a member of the MERS system described herein.

63.     Upon information and belief, T.D. Service Company is a foreign corporation registered to do business in the State of Nevada, is an Arizona corporation and "a preferred provider for MERS" and is a member of the MERS system described herein.

64.     Upon information and belief, Deutsche Bank National Trust Company is a corporation registered to do business in the State of Nevada, and is a member of the MERS system described herein.

65.     Upon information and belief, Ocwen Loan Servicing, LLC is a foreign limited liability company registered to do business in the State of Nevada and a member of the MERS system described herein.

66.     Upon information and belief, Western Progressive LLC is a foreign limited liability company registered to do business in the State of Nevada.

67.     Upon information and belief, AHMSI Default Services, Inc., is a foreign corporation registered to do business in the State of Nevada.

68.     Upon information and belief, Quality Loan Service Corporation is a foreign corporation registered to do business in the State of Nevada.

69.     Upon information and belief, WMC Mortgage Corporation is a foreign corporation no longer active, but at all times material hereto, was a member of the MERS system described herein.

70.     Upon information and belief, Litton Loan Servicing, L.P. is a foreign limited Partnership and is a member of the MERS system described herein.

71.     Upon information and belief, Defendant Federal Home Loan Mortgage Corporation (hereinafter referred to as "Freddie Mac") is a Virginia corporation doing business in Nevada, and is a creator, originator, and principle shareholder in MERSCORP, INC.  Upon information and

belief, Freddie Mac has, through its agents and employees, a chartered seat on the MERSCORP, INC. and/or MERS, Inc. board of directors.

72.     Upon information and belief, Defendant Federal National Mortgage Association (hereinafter referred to as "Fannie Mae") is a District of Columbia corporation doing business in Nevada and, at all times material hereto, is, a creator, originator, and shareholder of MERSCORP, INC. and a member of the MERS system described herein.  Upon information and belief, Defendant Fannie Mae has, through its agents and employees, a chartered seat on the MERSCORP, INC. and/or MERS, Inc. board of directors.

73.     Upon information and belief, Defendant GMAC Mortgage, L.L.C. was a Delaware corporation doing business in Nevada and, at all times material hereto, was a member of the MERS system described herein.   Upon information and belief, Defendant GMAC Mortgage, L.L.C., through its affiliate or subsidiary, GMAC Residential Funding Corp., was a creator, originator, and shareholder in MERSCORP, INC., and through its employees or agents employed by its division, affiliate or subsidiary, GMAC Residential Holding Corp., has a chartered seat on the MERSCORP, INC. and/or MERS, Inc. board of directors.

74.     Upon information and belief, PNC Financial Services Group, Inc., (hereinafter "PNC") is a Pennsylvania corporation and the parent company of National City Corporation, Inc., pursuant to a merger consummated in or around December 31, 2008.  Upon information and belief, PNC is or was a member of the MERS system described herein.

75.     Upon information and belief, National City Corporation, (hereinafter "National City Corp.") is a Delaware corporation wholly owned by PNC pursuant to a merger consummated in or around December 31, 2008, and is or was a member of the MERS system described herein.

76.     Upon information and belief, National City Bank (hereinafter "National City Bank"), is an Ohio corporation wholly owned by PNC pursuant to a merger consummated in or around December 31, 2008, and is or was a member of the MERS system described herein.

77.     Upon information and belief, Defendant National City Mortgage, a division of National City Bank, was a foreign company doing business in Nevada, and, at all times material hereto was a member of the MERS system described herein. Upon information and belief, Defendant National City Mortgage, through its agents and employees, has a chartered seat on the MERSCORP, INC. and/or MERS, Inc. board of directors.

78.     Upon information and belief, Defendant J.P. Morgan Chase Bank, N.A. was a New York corporation doing business in Nevada and, at all times material hereto, was a member in the MERS system described herein. Upon information and belief, J.P. Morgan Chase Bank, N.A., through its division, affiliate or subsidiary, Chase Home Mortgage Corporation of the Southeast, was a creator, originator, and shareholder in MERS, and through its employees or agents employed by its affiliate, J.P. Morgan Chase Co., has a chartered seat on the MERSCORP, INC. and/or MERS, Inc. board of directors.

79.     Upon information and belief, Defendant CitiMortgage, Inc., was a New York corporation doing business in Nevada and, at all times material hereto, was a member in the MERS system described herein and a principal shareholder of MERSCORP, INC.

80.     Upon information and belief, Defendant HSBC Bank, U.S.A. was a Delaware corporation and, at all times material hereto, was a member of the MERS system described herein.

81.     Upon information and belief, HSBC Mortgage Corporation, through its affiliate or subsidiary HSBC Finance Corp., was a Delaware corporation, and, at all times material hereto, was a creator, originator, and principal shareholder of MERSCORP, INC.

82.     Upon information and belief, Defendant Wells Fargo Bank, N.A. was a California corporation doing business in Nevada as Wells Fargo Home Equity and as Wells Fargo Home Mortgage, a Division of Wells Fargo Bank, N.A., and, at all times material hereto, was a member of the MERS system described herein and a creator, originator, and shareholder of MERSCORP, INC.

83.     Upon information and belief, Defendant Bank of America, N.A. was a foreign corporation doing business in Nevada, and was a successor in interest to Countrywide Home Loans, Inc. and/or acquired Countrywide Home Loans, Inc., and its affiliates and subsidiaries, for the purpose of funding and/or managing the ongoing business activities of Countrywide Home Loans, Inc.  Upon information and belief, Defendant Bank of America, N.A., at all times material hereto, was a member of the MERS system described herein.

84.     Upon information and belief, Defendant United Guaranty Corporation was a foreign corporation and, at all times material hereto, a creator, originator, and shareholder of MERSCORP, INC. and/or a member of the MERS system described herein.  Upon information and belief AIG United Guaranty Corporation has, through its agents and employees, a chartered seat on the MERSCORP, INC. and/or MERS, Inc. board of directors.

85.     Upon information and belief, Defendant Countrywide Home Loans, Inc. ("Countrywide") was a New York corporation authorized to do business in and doing business in Nevada and at all times material hereto was a member of the MERS system described herein and a shareholder in MERSCORP, INC. and is now wholly owned by Bank of America.

86.     Upon information and belief, Defendant GE Money Bank was an Ohio corporation and was a member of the MERS system described herein.

87.    Upon information and belief, Defendant National Default Servicing Corporation is a foreign corporation located in Phoenix, Arizona.

88.    Upon information and belief, Defendants Bank of New York, as successor to J.P. Morgan Chase Bank, N.A., as Trustee for BSALTA 2005-1 and IB Property Holdings, L.L.C. are foreign corporations doing business in Nevada.

89.    Upon information and belief, Defendant Old Republic Default Management Services, a division of Old Republic National Title Insurance Company is a foreign company doing business in Nevada.

90.    Upon information and belief, Defendant IB Property Holdings, LLC, is a foreign company doing business in Nevada.

91.    Upon information and belief, Defendant MTC Financial, dba Trustee Corps. is a foreign company doing business in Nevada.

### GENERAL ALLEGATIONS
#### (as to all Plaintiffs)

92.    In the United States, home purchases are typically financed by mortgages or loans that are secured by a deed of trust and a note which, when executed on behalf of the same entity and held by the same entity as a "note and deed of trust," entitle the holder of the note and deed of trust to foreclose on the property of the borrower if the borrower is in default without legal excuse or recourse.

93.    Estimates by consumer agencies forecasted that as many as 2.2 million of the nearly 70 million homeowners in the U.S. were at risk of defaulting beginning in 2008, while a reported 3 million foreclosures occurred in the U.S. in 2008.  Upon information and belief, foreclosures to date during calendar year 2009 are at a higher rate than that which occurred during 2008.

94.     From 2003 through 2007, the Defendants entered into mortgages with deeds of trust and notes that were separated after the execution of the mortgage, the note was sold to an investor who literally and actually provided the funds for funding the loan given to the borrower.  Prior to or immediately after the contract was signed by the borrower, the note was funded by a party other than the originator or servicer of the loan.

95.     The Mortgage Electronic Registration Service was created by the Defendants identified herein as co-conspirators in relation to the MERS system with the specific intent that MERS would be named the beneficiary as the nominee of the lender on the deeds of trust wherein a company which was acting as a MERS member named as beneficiary for the same purpose of not holding  a beneficial interest, which Plaintiffs were induced into signing.

96.     The foreclosures were initiated against the Plaintiffs by parties with no standing to commence or maintain any foreclosure proceeding and who were strangers to the purported loan transactions and which parties were and are unknown to the Plaintiffs and, moreover, did not fund the loans of the Plaintiffs and are not owed any of the funds to be repaid by the Plaintiffs.

97.     The foreclosures on Plaintiffs' homes complained of herein were initiated by Defendants who had and have no lawful right to initiate, advance or maintain any foreclosure action against the Plaintiffs or their homes.

98.     All Defendants participated in a conspiracy to cause the Plaintiffs to enter into instruments that would result in the foreclosure of their homes, to initiate foreclosure on the Plaintiffs' homes without the lawful right to do so; and Defendants have been unjustly enriched by the payments of the Plaintiffs on the notes.

99.     The lenders and investors in mortgage-backed securities, including some of the Defendants, have sought bail out money from the United States Government.

100.   The lenders and investors in mortgage backed securities, including some of the Defendants, have used those funds to repay investors who funded the loans of the Plaintiffs, thus having no liability for the notes and no right to collect on the notes and no right to initiate foreclosures on the Plaintiffs' homes.

**(Facts as to Plaintiffs Goodwin, McArtor, Cheney and Gabel)**

101.   Plaintiffs Goodwin, McArtor, Cheney and Gabel have deeds of trust that state that the beneficiary or/ beneficiary as the nominee of the lender is MERS as described herein.

102.   Aleta Goodwin executed a Deed of Trust dated November 29, 2006 in the amount of $254,400.00 related to the purchase of her residence at 2281 Rio Lobo Lane, Reno, Nevada which listed American Home Mortgage as Lender and which listed MERS as beneficiary.  Ticor Title of Nevada was listed as the Trustee and American Home Mortgage was the original servicer. The Deed of Trust was supplemented by an Adjustable Rate Rider that provided that the interest rate on the underlying note would not be greater than 9.875% or less than 6.875% on the first change date, and would never be more than 12.875% or less than 6.875% thereafter.  An interest-only addendum to the Adjustable Rate Rider provided that the initial monthly payment on the note was $1,457.50 beginning January 1, 2007 (interest only), with the first payment of principal and interest becoming due on January 1, 2012, and with all amounts under the note due on December 1, 2036.  The note was subject to a prepayment penalty.

103.   Aleta Goodwin's primary residence was also encumbered by a second Deed of Trust dated November 28, 2006 in the amount of $63,600.00 in favor of American Home Mortgage as Lender and which listed MERS as beneficiary.  The Deed of Trust allegedly secured a Note which contained a prepayment penalty.  Ticor Title of Nevada, Inc. was listed as the Trustee and American Home Mortgage was the original servicer.

104.     Ms. Goodwin obtained preapproval for the loans ultimately originated by American Home Mortgage over the telephone, and the mortgage broker acting as an agent for American Home Mortgage provided no explanation that the payments to be due under the notes were subject to adjustment or that the loans were subject to any prepayment penalty.

105.     Aztec Foreclosure Corporation recorded a Notice of Default and Election to Sell Under Deed of Trust against the Goodwin residence on December 26, 2008.  On or about May 18, 2009, Aztec Foreclosure Corporation, as Trustee, issued a Trustee's Deed Upon Sale to HSBC Bank, U.S.A., N.A., as Indenture Trustee for the Registered Note Holders of Renaissance Home Equity Loan Trust 2008-1 ("HSBC") following a public auction where HSBC purchased the property for $203,670.00.

106.     On or about May 29, 2009 HSBC issued a Three-Day Notice to Quit to Ms. Goodwin.

107.     Robert McArtor executed a Deed of Trust dated October 18, 2004 in the amount of $184,000.00 for the purpose of refinancing the residence located at 1120 Vance Way, Sparks, Nevada which listed GreenPoint Mortgage Funding, Inc. as Lender and which listed MERS as beneficiary.  Marin Conveyancing Corp. was listed as the Trustee and GreenPoint Mortgage Funding, Inc. was the original servicer. The Deed of Trust was supplemented by an Adjustable Rate Rider which related to an adjustable rate note providing for initial monthly payments of $958.34 beginning December 1, 2004, which were subject to change beginning on November 1, 2007 by adding 2.75% to the six-month LIBOR index.

108.     On or about March 31, 2009, Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company, recorded a Trustee's Deed Upon Sale against the McArtor residence.  The Trustee's Deed reflects a conveyance of the McArtor

residence to the Bank of New York as successor to JP Morgan Chase Bank, N.A. as Trustee for BSALTA 2005-1 ("Bank of NY") pursuant to Bank of NY having purchased the property for $129,600.00 at a trustee's sale on January 15, 2009.

109.     Lisa Cheney and Darrin Cheney entered a Deed of Trust dated November 30, 2006 related to refinancing the Cheney residence located at 2875 Phritzie Lane, Fallon, Nevada in the amount of $140,000.00 which listed At Home Capital as Lender and which listed MERS as the beneficiary. TCI-Title and Closing, Inc. was listed as the Trustee and At Home Capital was the original servicer.  The Deed of Trust was supplemented by an Adjustable Rate Rider that provided for an initial interest rate of 11.99%.  The rider further provided for interest only payments for the first sixty payments due under the note and initial monthly payments beginning January 1, 2007. The interest rate was subject to change on December 1, 2008 and every six months thereafter based on adding 6.5% to the six-month LIBOR index.  Upon information and belief, the note provided for negative amortization.  The Deed of Trust was also supplemented by a Prepayment Rider that provided for a prepayment penalty.  Plaintiffs Cheney attempted, unsuccessfully, to modify their loan in 2007.

110.     On October 27, 2008, Seaside Trustee, Inc., acting as trustee, recorded with the Churchill County Recorder a Trustee's Deed Upon Sale related to the Cheney residence which indicated that the property had been sold at a trustee's sale to I.B. Property Holdings, L.L.C., a Delaware Limited Liability Company, for $106,250.00 at a Trustee's Sale, notice of which had been previously recorded with the Churchill County Recorder on September 12, 2008 scheduling the sale for October 3, 2008.

111.     The Cheneys expect to receive a Notice to Quit the premises as a result of the sale.

112.     Heather Gabel's primary residence is located at 1447 Kinglet Drive.

113.    On July 10, 2007, Heather Gabel entered a Deed of Trust for the purpose of refinancing the Gabel residence located at 1447 Kinglet Drive, Sparks, Nevada in the amount of $263,250.00 which listed First National Bank of Arizona as Lender and which listed MERS as the beneficiary. Western Title Company was listed as the Trustee and First National Bank of Arizona was the original servicer.

114.    On or about January 9, 2009, Heather Gabel retained a consultant to assist her in modifying her loan on the Kinglet Drive residence with Defendant Quality Loan Service Corp.

115.    Heather Gabel also owned property located at 1862 Central Court, Sparks, Nevada, but when her husband lost his employment as a contractor in the plumbing business, they allowed the home to go in to foreclosure.  The home at 1862 Central Court was encumbered by a Deed of Trust in the amount of $245,250.00 in favor of First National Bank of Arizona as Lender.

116.    A Trustee's Deed upon Sale for the property located at 1862 Central Court in Sparks, Nevada on was recorded on February 20, 2009, showing the property was sold by Quality Loan Service Corp. to Saxon Mortgage Services, Inc. on February 12, 2009 for $260,618.76. Saxon Mortgage Services, Inc. was the foreclosing beneficiary.

117.    On April 21, 2009, Heather Gabel was served with a notice to quit the premises at 1447 Kinglet Drive based upon the sale of the home at 1862 Central Court.  The notice was issued on behalf of Saxon Mortgage Services, Inc.

118.    The originators of the loans to the Plaintiffs did not ascertain prior to loaning the funds for the mortgages of the Plaintiffs whether or not the Plaintiffs qualified for the loans.

119.    The homes of Goodwin, McArtor, and Cheney have already been subjected to foreclosure by Defendants based upon the MERS deeds of trust.

120.     The homes of Plaintiffs Goodwin, McArtor, and Cheney have been conveyed to the banks that acted as servicers for the payments allegedly for the mortgages or the homes have been conveyed to parties stating that they are the trustee for the beneficial owners of the deeds of trust, but none of those entities that claim to have title to the homes of these Plaintiffs are MERS or the nominee of the lender on the deeds of trust or a proper beneficiary under the deeds of trust.

121.     None of the parties acting as a trustee, including, but not limited to, Defendants Quality Loan Service Corporation, Aztec Foreclosure Corporation, and Old Republic Default Management Services, in the noticing of the sales of the Goodwin, McArtor, or Cheney residences had the authority to conduct the sale on behalf of MERS as the purported beneficiary under the respective deeds of trust related to the properties, or on behalf of any party to whom MERS may have assigned its purported beneficial interest prior to the sale.

122.     The parties who purchased the Goodwin, McArtor, and Cheney residences, including Defendants HSBC, Bank of New York, and IB Property Holdings, L.L.C. were MERS members and co-conspirators as alleged herein and/or knew or should have known that MERS was not a proper beneficiary.

123.     Upon information and belief, the parties who purchased the Goodwin, McArtor, and Cheney residences were not bona fide purchasers for value.

124.     The Defendants have recorded these deeds and have or will attempt to eject the Plaintiffs Goodwin, McArtor, and Cheney from their homes.

125.     The Plaintiffs Goodwin, McArtor, Cheney and Gabel all still live in their homes and have been served with notices to quit the premises.

**(Facts as to Plaintiff Fredrick Tulip)**

126.     Plaintiff Fredrick Tulip had a deed of trust on his property that stated that a MERS was the beneficiary or the nominee for the lender as described below.

127.     Fredrick S. Tulip executed a Deed of Trust dated September 25, 2006 in the amount of $279,000.00 related to his residence located at 659 Bowles Lane, Gardnerville, Nevada which listed New Century Mortgage Corporation as Lender and which listed MERS as beneficiary. Stewart Title was listed as the Trustee and HomeEq Servicing, a division of GMAC, was the original servicer.   The Deed of Trust was supplemented by an Adjustable Rate Rider providing for an initial interest rate of 7.100% subject to change on October 1, 2008 based on adding 6.050% to the LIBOR six-month index, and which interest rate capped at 14.100%, but would never be less than 7.100%.  The rider also provided for an interest only period between September 25, 2006 and October 1, 2011.  The Deed of Trust was also supplemented by a prepayment rider that contained prepayment penalty provisions if a prepayment which exceeded 20% of the original amount of the note was made within two years from September 25, 2006.  The initial monthly payment under the note was $1,650.75 beginning November 1, 2006.

128.     On or about November 13, 2008, National Default Servicing Corporation recorded a Notice of Trustee's Sale against the Tulip property with the Douglas County Recorder scheduling the sale for December 20, 2008.

129.     On or about December 24, 2008, a Trustee's Deed was recorded with the Douglas County Recorder.  Upon information and belief, the property was sold to Deutsche Bank National Trust Company, as Trustee ("Deutsche Bank").

130.     On or about January 12, 2009, Defendant Deutsche Bank issued a three-day notice to quit to Plaintiff Tulip.

131.   Plaintiff Tulip lost his home and has been required to replace his home in order to have shelter for himself and his family.

132.   Plaintiff Tulip lost his home due to the foreclosure on the home by entities alleging to be the trustee or owner of the beneficial interest in the deed of trust, but which entities are not MERS and not the lender stated on the original the deeds of trust.

133.   None of the parties who purchased the Plaintiffs' properties as described herein were bona fide purchasers in good faith.

**(Specific facts as to Plaintiffs Joaquin Arevalo, Linda R. Barba, Daniel F. Coslow, Rosa M. Diaz and Sergio Diaz, Cynthia and Charles J. Flagg, Janice M. Gannon, Pamela Horton, Brian E. Jones, William Dan Kluttz, Joan Blake and Ronnie McKinney, Heather Monahan and George R. Moreno, James H. Mullennix and Jeanne K. Mullennix, Victor Parece, Cody Premo, George W. Premo, III, Travis and Sylvia Rawlings, Tonya Dawn Mull, fka Tonya Dawn Robinson, James Sandborn, Signe Stehman, John and Debbie Sullivan, Joseph and Arlene Thurston, Jesus Tovar, and John F. and Rosalie L. Wilburn)**

134.   The Plaintiffs named just above have deeds of trust with MERS named as the beneficiary or the nominee for the lender as follows:

a.   Joaquin Arevalo executed a Deed of Trust dated October 25, 2007 in the amount of $360,832.00 related to the Arevalo residence located at 8389 Opal Ranch Way, Reno, Nevada which listed Universal Mortgage Company, L.L.C. as Lender and which listed MERS as the beneficiary.  Stewart Title Company was listed as the Trustee.  Upon information and belief, Defendant Countrywide Home Loans, Inc. was later substituted as Lender, at a time known to Defendants.  Upon information and belief, MERS later assigned its purported beneficial interest in the deed of trust to Recontrust Company, N.A.

b.   Linda Barba executed a Deed of Trust dated April 19, 2007 in the amount of $117,118.00 related to the purchase of the Barba residence located at 3010 Beaverhead Lane,

1   Fernley, Nevada which listed Countrywide Home Loans, Inc. as Lender and which listed MERS as

2   the beneficiary.  Recontrust Company, N.A. was listed as the Trustee.  Ms. Barba also executed a

3   second Deed of Trust dated April 19, 2007 in the amount of $44,279.00 listing Countrywide Home

4   Loans, Inc. as Lender and listing MERS as the beneficiary.  Recontrust Company, N.A. was listed

5   as the Trustee.  The deeds of trust were entered to secure loans to purchase the Barba residence

6   described herein.  Per her 2006 federal income tax return, Ms. Barba received income in the

7   amount of $11,160.00 from social security benefits.  Her 2007 benefits totaled $12,534.00.  Her

8   2008 benefits totaled $12,820.80.  The payments due under the note allegedly secured by the first

9   deed of trust were $1,070.09 for the first 120 months of the loan term, then scheduled to increase

10  to $1,399.90 thereafter.  The initial payments under the first deed of trust comprised 115% of Ms.

11  Barba's social security benefits.  Ms. Barba also received social security benefits for her son and

12  nephew which were used by the Countrywide representative to qualify Ms. Barba for the loans.

13  The Countrywide representative informed Ms. Barba that if she made the payments on time for

14  one year, she would be able to refinance the mortgages.  Ms. Barba relied on this representation

15  and on the representation that she was qualified to enter the loans in entering the loans, as

16  evidenced by her signature on the loan documents.  In approximately June 2008, when Ms. Barba

17  attempted to refinance the first and second mortgages, Countrywide informed her that she was not

18  able to modify the loans because she could not use social security payments as income.  In

19  September or October 2008, Countrywide informed Ms. Barba that if she fell behind in her

20  payments, she would have a better chance at obtaining a loan modification.  In reliance on that

21  statement by Countrywide's representative, Ms. Barba ceased making payments in November

22  2008.

23

24

25

c.      Daniel F. Coslow and Julie A. Coslow entered into a Deed of Trust dated November 28, 2005 related to the Coslow residence located at 165 East 5th Avenue, Sun Valley, Nevada in the amount of $145,000.00 which listed MILA, Inc. as Lender and which listed MERS as the beneficiary. First American Title was listed as the Trustee. The deed of trust was security for an interest only adjustable rate note which required initial monthly payments of $809.58, with an initial principal and interest payment beginning January 1, 2011, and which note matured on December 1, 2035.  Plaintiffs Coslow attempted to modify this loan through Litton Loan Services in May 2008.

d.      Rosa Diaz and Sergio Diaz executed a Deed of Trust dated October 30, 2006 in the amount of $284,720.00 listing WMC Mortgage Corp. as Lender and listing MERS as the beneficiary related to the purchase of the Diaz residence at 7186 Truth Drive, Sparks, Nevada. Westwood Associates was listed as the Trustee and WMC-Western Progressive was the original servicer.   The deed of trust was allegedly security for an adjustable rate note with an initial interest rate of 5.945% which was supplemented by a balloon rider.  The note called for initial payments of $1,555.67, which payments were subject to adjustment of the initial interest rate on November 1, 2008 based on adding 5.975% to the 6 month LIBOR index, and which interest rate was capped at 12.445%.   This note was subject to a prepayment penalty of 20% of the original principal amount due under the note if the note was paid in full within the first 24 months after execution of the note.  The Diazes also executed a second deed of trust relating to the same property on October 30, 2006 in the amount of $71,180.00 which listed WMC Mortgage Corp. as Lender and which listed MERS as the beneficiary, which was allegedly security for a note bearing interest at the rate of 11.990% and called for monthly payments in the amount of $731.62.  The

1    initial payments on the first and second notes comprised approximately 63% of the Diazes'

2    monthly income in 2006.

3            e.      Cynthia and Charles Flagg executed a Deed of Trust dated April 14, 2005 in

4    the amount of $248,000.00 related to refinancing a loan on the Flagg residence at 2278 Desert

5    Cove Court, Reno, Nevada which listed BNC Mortgage, Inc. as Lender and which listed MERS as

6    the beneficiary.  T.D. Service Company was listed as the Trustee.  The deed of trust was allegedly

7    security for an interest only adjustable rate note which required initial monthly payments of

8    $1,516.94 with an initial principal and interest payment beginning May 1, 2007, and which note

9    matured on May 1, 2035.  The Flaggs also executed a second Deed of Trust relating to the same

10   property on April 14, 2005 which listed BNC Mortgage, Inc. as Lender and which listed MERS as

11   the beneficiary in the amount of $62,000.00.  T.D. Service Company was listed as the Trustee.

12   The second Deed of Trust was supplemented by a balloon rider.  The second Deed of Trust was

13   allegedly security for an interest only note bearing interest at the rate of 11.75% per year, with

14   monthly payments of $624.84 for 179 months, and a balloon payment of $53,474.67 due on May

15   1, 2020.

16           f.      Janice M. Gannon executed a Deed of Trust dated June 22, 2005 in the

17   amount of $346,465.00 which listed American Home Mortgage Acceptance, Inc. as Lender and

18   which listed MERS as the beneficiary related to purchase of the Gannon residence at 3965 Skyline

19   Boulevard, Reno, Nevada. Ticor Title of Nevada, Inc. was listed as the Trustee. The deed of trust

20   was allegedly security for an adjustable rate note, which bore interest at an initial rate of 6%,

21   subject to change beginning on July 1, 2010, and subject to change every six months thereafter, by

22   adding 2.25% to the six-month LIBOR index, and which interest rate was capped at 11%

g.      Pamela Horton entered into a Deed of Trust dated December 5, 2005 in the

amount of $1,137,500.00 which listed Pacific Crest Savings Bank as Lender and which listed

MERS as the beneficiary related to a permanent loan on the residence at 1112 Cortez Lane,

Gardnerville, Nevada.  First American Title was listed as the Trustee and Pacific Crest Savings

was the original servicer.  The deed of trust was allegedly security for an adjustable rate note

which required monthly payments of $6,161.46 with an initial principal and interest payment

beginning February 1, 2006, and which note matured on January 1, 2036.  The note was

supplemented by an Adjustable Rate Rider with an initial interest rate of 6.5% set to adjust on

January 1, 2011 with a rate cap of 11.5%.  Per her 2004 income tax return, Ms. Horton received an

adjusted gross income in the amount of $48,305.00.

h.      Brian E. Jones executed a Deed of Trust dated November 14, 2006 in the

amount of $337,487.00 which listed Affordable Interest Mortgage as Lender and which listed

MERS as the beneficiary for the purpose of refinancing a loan on the Jones residence at 5088

Coggens Road, Reno, Nevada.  Founders Title Company of Nevada was listed as the Trustee and

Affordable Interest Mortgage was the original servicer.

i.      William Dan Kluttz entered into a Deed of Trust dated October 18, 2006 in

the amount of $256,795.00 related to the purchase of the Kluttz residence at 1263 Bellatrix Way,

Sparks, Nevada which listed Summit Funding, Inc. as Lender and which listed MERS as the

beneficiary.  North American Title Company was listed as the Trustee and Summit Funding, Inc.

was the original servicer. The deed of trust was allegedly secured by an interest only fixed rate

note required initial monthly payments of $1,364.22 for the first ten years, increasing to $1,895.74

per month beginning December 1, 2016 and which note matured on November 1, 2036.

j.      Joan Blake and Ronnie McKinney executed a Deed of Trust dated July 18, 2005 in the amount of $249,600.00 listing First Horizon Home Loan Corporation as Lender and MERS as beneficiary related to the residence at 2283 Ruddy Way, Sparks, Nevada.   First American Title was listed as the Trustee and First Horizon Loan Corporation was the original servicer.  The deed of trust was allegedly security for an adjustable rate note with an initial interest rate of 6.125% and initial payments of $1,274.00 per month with an initial change date of August 1, 2010.  Also on June 18, 2005, Joan Blake and Ronnie McKinney entered a second Deed of Trust in the amount of $46,800.00 related to the property at 2283 Ruddy Way, Sparks, Nevada which listed First Horizon Home Loan Corporation as Lender and which allegedly secured a fixed rate balloon note bearing yearly interest at 9%, with monthly payments of $376.57 beginning September 1, 2005, and the balance due in full on August 1, 2020.

k.      Heather Monahan and George Moreno executed a Deed of Trust on September 13, 2005 in the amount of $524,000.00 for the purpose of refinancing a loan on the residence located at 1743 Cloud Peak Drive, Sparks, Nevada, which listed CTX Mortgage Company, LLC as Lender and which listed MERS as the beneficiary. John L. Matthews or Timothy M. Bartosh was listed as the Trustee and CTX Mortgage Company, L.L.C. was the original servicer.

l.      James H. and Jeanne K. Mullennix executed a Deed of Trust on June 17, 2005 in the amount of $296,550.00 related to the purchase of the residence at 2235 Lenticular Drive, Sparks, NV which listed Countrywide Home Loans, Inc. as Lender and which listed MERS as beneficiary.  Recontrust Company, N.A. was listed as the Trustee and Countrywide Home Loans, Inc. was the original servicer.  The Deed of Trust was supplemental with an Adjustable Rate Rider.  The Deed of Trust was allegedly security for an adjustable rate note with an initial

yearly interest rate of 1.375%, with an initial change date of August 1, 2005, and with initial

monthly payments of $1,005.76.  The Note was subject to a prepayment penalty in the amount

equal to six months' advance interest on the amount of the prepayment if, within the first 36

months after execution of the Note, a prepayment was made exceeding 20% of the original

principal amount.  The Note provided for negative amortization.

    m.  James H. Mullennix and Jeanne Mullennix executed a Deed of Trust dated

October 19, 2005 related to a refinancing of a loan the residence located at 40 White Dove Court,

Sparks, Nevada in the amount of $432,000.00 which listed Countrywide Home Loans, Inc. as

Lender and which listed MERS as beneficiary.   Recontrust Company, N.A. was listed as the

Trustee and Countrywide Home Loans, Inc. was the original servicer. The Deed of Trust was

supplemented by an Adjustable Rate Rider that provided for changes in the initial interest rate of

1.5% on December 1, 2005 by adding 2.9% to an index based on the 12 month yield on U.S.

Treasury Securities.  Per the Adjustable Rate Rider, the initial monthly payment under the note

was $1,490.92.  The loan terms provided for negative amortization.  The note which was allegedly

secured by the Deed of Trust referred to herein was subject to a prepayment penalty.

    n.  Victor Parece entered into a Deed of Trust on December 24, 2007 in the

amount of $204,419.00 related to a refinancing of a loan on the Parece residence at 199

Alexandrite Court, Sun Valley, Nevada which listed Taylor, Bean & Whitaker Mortgage Corp. as

Lender and MERS as the beneficiary.  Western Title Company, Inc. was listed as the Trustee and

Taylor, Bean & Whitaker Mortgage Corp. was the original servicer.

    o.  Cody Premo and George W. Premo executed a Deed of Trust dated

September 2, 2005 in the amount of $300,000.00 related to a refinancing of a loan on the Premo

residence located at 3971 Burlington Drive, Sparks, Nevada, which listed Countrywide Home

Loans, Inc. as Lender and which listed MERS as the beneficiary.  Recontrust Company, N.A. was listed as the Trustee and Countrywide Home Loans, Inc. was the original servicer.

p.      Travis and Cynthia Rawlings executed a Deed of Trust dated January 12, 2006 in the amount of $448,300.00 related to the purchase of the Rawlings residence located at 2330 Copper Springs Drive, Reno, Nevada which listed CTX Mortgage Company as Lender and MERS as the beneficiary.  Timothy M. Bartosh or William B. Naryka was listed as the Trustee and CTX Mortgage Company was the original servicer.

q.      Tonya Dawn Mull, fka Tonya Dawn Robinson, executed a Deed of Trust dated November 1, 2007 in the amount of $268,850.00 related to the purchase of the Robinson residence located at 985 Country Ridge Drive, Sparks, Nevada, which listed Sierra Pacific Mortgage Company, Inc. as Lender and which listed MERS as the beneficiary.  Greenhead Investments, Inc. was listed as the Trustee and Sierra Pacific Mortgage Company, Inc. was the original servicer.

r.      James Sandborn executed a Deed of Trust dated April 2, 2007 in the amount of $296,786.00 related to the purchase of the Sandborn residence located at 8911 Finnsech Drive, Reno, Nevada, which listed Universal American Mortgage Company of California as Lender and which listed MERS as the beneficiary.  Stewart Title Company was listed as the Trustee and Universal American Mortgage Company was the original servicer. Upon information and belief, the loan was transferred to Countrywide Home Loans, Inc.

s.      Signe Stehman executed a Deed of Trust dated May 10, 2006 in the amount of $350,000.00 related to refinancing a loan on the property located at 35 Leo Drive, Sparks, NV which listed Preferred Financial Group, Inc. dba Preferred Mortgage Services as Lender and

MERS as beneficiary.  Western Title was listed as the Trustee and Preferred Financial Group, Inc. dba Preferred Mortgage Services was the original servicer.

t.      Joan Sullivan and Debbie Sullivan executed a Deed of Trust dated March 14, 2007 in the amount of $559,200.00 related to refinancing a loan on the Sullivan residence located at 3799 Meadow Wood Road, Carson City, Nevada, which listed First NLC Financial Services, LLC as Lender and listed MERS as the beneficiary.  The Trustee designation was blank and First NLC Financial Services was the original servicer. The deed of trust allegedly secured an adjustable rate note with an initial interest rate of 9.49%.

u.      Joseph Thurston and Arlene Thurston executed a Deed of Trust dated July 27, 2005 in the amount of $478,400.00 related to the Thurston residence located at 2830 La Cresta Drive, Minden, Nevada which listed Fremont Investment & Loan as Lender and which listed MERS as the beneficiary.  First American Title Company was listed as Trustee and Fremont Investment & Loan was the original servicer.  The deed of trust allegedly secured an adjustable rate note which required initial monthly payments of $2,292.33 supplemented by an Adjustable Rate Rider in which the interest rate would be subject to change beginning on August 1, 2007 and every six months thereafter by adding 4.8725% to the 6 month LIBOR rate on every change rate date thereafter.  The note was also supplemented with a prepayment rider providing for a prepayment penalty of up to 20% of the original principal amount of the note if the note was paid within two years after issuance of the loan.  Mr. and Mrs. Thurston executed a second Deed of Trust dated July 27, 2005 in the amount of $80,000.00 related to their residence which listed Fremont Investment and Loan as Lender and which listed MERS as beneficiary.  The second deed of trust was allegedly security for a fixed rate note bearing interest of 9.5% (APR) with monthly

payments of $658.15.  Per their 2004 income tax return, Mr. and Mrs. Thurston earned an adjusted gross income of $88,069.00.

      v.     Jesus Tovar executed a Deed of Trust dated June 1, 2007 in the amount of $278,400.00 related to the refinancing of a loan on the Tovar residence located at 4240 Mira Loma Drive, Reno, Nevada which listed Wilson Resources, Inc. as the Lender and which listed MERS as the beneficiary.  Western Title Company was listed as the Trustee and Wilson Resources was the original servicer. The deed of trust was supplemented with a fixed/adjustable rate rider which provided that the initial interest rate on the underlying note of 6.25% would adjust on July 1, 2012 by adding 2.25% to the then-current LIBOR index.  Mr. Tovar also executed a second Deed of Trust dated June 1, 2007 in the amount of $52,000.00 related to the Tovar residence which listed Wilson Resources, Inc. as Lender and which listed MERS as the beneficiary.  This deed of trust was supplemented with a balloon rider.

      w.     John F. Wilburn and Rosalie Wilburn executed a Deed of Trust dated January 12, 2007 in the amount of $308,000.00 related to the refinancing of a loan on the Wilburn residence located at 2165 Stone View Drive, Sparks, Nevada which listed Countrywide Home Loans, Inc. as Lender and which listed MERS as beneficiary.  Recontrust Company, N.A. was listed as the Trustee and Countrywide Home Loans, Inc. was the original servicer.  The deed of trust was allegedly security for a note bearing interest at the rate of 6.875% and which called for monthly payments of $1,886.11.  The monthly payments called for under the note were 52% of the 2006 adjusted gross income reported on the Wilburns' 2006 income tax return of $43,143.00.

135.    The Plaintiffs have all received notice that their homes will be subjected to foreclosure or sale as follows:

a.      Recontrust Company issued a Notice of Default and Election to Sell the Arevalo residence on or about March 27, 2009 which was recorded with the Washoe County Recorder on March 27, 2009.  The Notice indicates that if the default is not cured by May 1, 2009, the property may thereafter be sold.  Once the Notice of Default has been recorded for ninety (90) days,  the property is subject to sale within twenty-one days.

b.      Recontrust Company issued a Notice of Default and Election to Sell the Barba residence on or about February 10, 2009 which was recorded with the Lyon County Recorder on February 11, 2009.  Recontrust Company issued a Notice of Trustee's Sale on May 15, 2009 and recorded the notice with the Lyon County Recorder on May 19, 2009.  The Barba residence was scheduled for a trustee's sale on June 5, 2009, which was continued to June 19, 2009.

c.      Quality Loan Service Corp. issued a Notice of Breach and Default and Election to Cause Sale of Real Property Under Deed of Trust on the Coslow residence on May 12, 2009 which was recorded with the Washoe County Recorder on May 13, 2009.  The Notice indicates that if the default is not cured by June 17, 2009, the property may thereafter be sold.

d.      Western Progressive, LLC issued a Notice of Breach and Default and of Election to Sell the Real Property Under First Deed of Trust on the Diaz residence on April 14, 2009 which was recorded with the Washoe County Recorder on April 14, 2009.  The Notice indicates that if the default is not cured by May 19, 2009, the property may thereafter be sold.

e.      National Default Servicing Company issued a Notice of Default and Election to Sell Under Deed of Trust on the Flagg residence on April 28, 2009 which was recorded with the Washoe County Recorder on April 28, 2009.  The notice indicates that if the default is not

cured within three months following the recordation of the notice, a date to cause the sale of the residence will be set.

f.      T.D. Service Company issued a Notice of Default and Election to Sell Under Deed of Trust on the Gannon residence on February 17, 2009 which was recorded with the Washoe County Recorder on February 17, 2009.  On May 18, 2009, T.D. Service Company, as agent for AHMSI Default Services, recorded a Notice of Trustee's Sale on the Gannon residence with the Washoe County Recorder, scheduling the sale for June 11, 2009.

g.      National Default Servicing Corporation recorded a Notice of Default against the Horton residence with the Douglas County Recorder on April 29, 2009.  The Notice indicates that if the default is not cured by June 3, 2009, the property may thereafter be sold.

h.      National Default Serving Corporation, as Agent for Wells Fargo Bank, N.A., fka Wells Fargo Home Mortgage, Inc., fka Norwest Mortgage, Inc., issued a Notice of Default and Election to Sell Under Deed of Trust on the Jones residence on February 18, 2009 which was recorded with the Washoe County Recorder on February 18, 2009.  On May 19, 2009, National Default Servicing Corporation issued a Notice of Trustee's Sale for the Jones residence and recorded the Notice with the Washoe County Recorder on May 19, 2009.  The sale was scheduled for June 10, 2009.

i.      Recontrust Company, N.A. issued a Notice of Default and Election to Sell Under Deed of Trust on May 4, 2009 on the Kluttz residence and recorded the Notice with the Washoe County Recorder on the same day.  The notice indicates that if the default is not cured by June 7, 2009, the property may thereafter be sold.

j.      Quality Loan Servicing Corp. as agent for beneficiary, recorded a Notice of Default and Election to Cause Sale of Real Property  Deed of Trust on the Blake/McKinney

property with the Washoe County Recorder on May 26, 2009. The Notice indicates that if the default is not cured by June 30, 2009, the property may be sold thereafter.

k.       National Default Servicing Corporation, as Agent for America's Servicing Company issued a Notice and Election to Sell on October 8, 2008 on the Monahan/Moreno residence and recorded the Notice with the Washoe County Recorder.  On January 13, 2009, National Default Servicing Corporation recorded a Notice of Trustee's Sale on the Monahan/Moreno residence with the Washoe County Recorder, scheduling the sale for February 4, 2009.  The sale was continued and is expected to be rescheduled to a date in July.

l.       Recontrust Company, N.A. issued a Notice of Trustee's Sale on the Mullenix property at 2235 Lenticular Drive, Sparks, NV on May 28, 2009 which indicates the property is scheduled to be sold on June 17, 2009.

m.      Mr. and Mrs. Mullennix are approximately six months behind on the mortgage payment on the White Dove property and expect a Notice of Default to be issued on the property at any time.

n.       MTC Financial, Inc. dba Trustee Corps issued a Notice of Default and Election to Sell Under Deed of Trust on the Parece residence on February 20, 2009 and recorded the notice on February 20, 2009 with the Washoe County Recorder.  The notice indicated that if the default was not cured by April 7, 2009 the property may thereafter be sold.  MTC Financial, Inc. dba Trustee Corps issued a Notice of Trustee's Sale subsequent to April 7, 2009 which scheduled the Parece residence to be sold on June 10, 2009.  The sale was subsequently postponed, and the Parece residence is subject to sale at any time.

o.       Recontrust Company issued a Notice of Default and Election to Sell Under Deed of Trust on the Premo residence on May 20, 2009 and recorded the Notice on May 20, 2009

with the Washoe County Recorder.  The Notice indicates that if the default is not cured by June

24, 2009 the property may thereafter be sold.

       p.      Quality Loan Service Corp. issued a Notice of Breach and Default and

Election to cause sale of real property Under Deed of Trust on the Rawlings residence of January

13, 2009 and recorded the notice on January 13, 2009 with the Washoe County Recorder.  Quality

Loan Service Corp. then issued a Notice of Trustee's Sale on April 14, 2009 and recorded the

notice on April 17, 2009 with the Washoe County Recorder.  The Rawlings residence was

scheduled for a Trustee's Sale on May 6, 2009.  The sale was postponed and the home is subject to

sale at any time without notice.

       q.      Recontrust Company issued a Notice of Default and Election to Sell Under

Deed of Trust on the Robinson residence on April 29, 2009 and recorded the Notice with the

Washoe County Recorder on April 29, 2009.  The Notice indicates that if the default is not cured

by June 3, 2009, the property may thereafter be sold.

       r.      Recontrust Company issued a Notice of Default and Election to Sell Under

Deed of Trust on the Sandborn residence on May 1, 2009 and recorded the Notice with the

Washoe County Recorder on May 1, 2009.  The Notice indicates that if the default is not cured by

June 5, 2009, the property may thereafter be sold.

       s.      National Default Servicing Corporation recorded a Notice of Trustee's Sale

on the Stehman residence on February 11, 2009 scheduling the trustee's sale for February 11,

2009.  This sale was continued to July 1, 2009.

       t.      Western Progressive, LLC, issued a Notice of Trustee's Sale on the Sullivan

residence on April 27, 2009 scheduling the trustee's sale for May 22, 2009. The sale was

postponed to June 15, 2009.

1    u.    On or about December 30, 2008, a Notice of Trustee's Sale was recorded

2    against the Thurston residence with the Douglas County Recorder.  The sale was scheduled for

3    January 28, 2009, but was later canceled.  The Thurston property is subject to sale at any time.

4    v.    Recontrust Company, N.A. issued a Notice of Trustee's Sale on May 29,

5    2009 on the Tovar residence which was recorded with the Washoe County Recorder on June 2,

6    2009.  The trustee's sale was noticed for June 17, 2009.

7    w.    Recontrust Company issued a Notice of Default and Election to sell the

8    Wilburn residence on June 2, 2009 which was recorded with the Washoe County Recorder on June

9    2, 2009. The Notice indicates that if the default is not cured by July 7, 2009, the property may

10   thereafter be sold.

11

12   136.    The Plaintiffs and/or their family members live in these homes.

13   137.    Some of the Plaintiffs have attempted to seek modification of their loans with the

14   servicers who have failed and refused to modify the terms of the loans.

15   138.    The entities that are giving notice that they will foreclose on the homes of the

16   Plaintiffs are not MERS and are not the lenders that originated the deeds of trust.

17   139.    These Plaintiff received loans on stated income or with no proof of income.

18                    **FIRST CLAIM FOR RELIEF**

19                    **(Fraud in the Inducement)**

20               **(As to Plaintiffs Barba and Wilburn**
                 **Against Defendant Countrywide Home Loans, Inc. and**
21               **As to Plaintiffs Diaz Against WMC Mortgage  Corp. ONLY)**

22   140.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set

23   forth in this claim.

24

25

141.   Defendants Countrywide Home Loans, Inc. and WMC Mortgage Corp., respectively, each had a duty to disclose material loan terms to Plaintiffs Barba and Wilburn and Diaz, respectively, and to be truthful in their representations to Plaintiffs.

142.   In support of her claim against Countrywide Home Loans, Inc., Plaintiff Barba alleges as follows:

a.   Plaintiff Barba's loans were originated in April 2007 by Defendant Countrywide Home Loans, Inc.

b.   Defendant Countrywide Home Loans, Inc., through its agent or agents, failed to disclose the material terms of the loan and incidental services to Plaintiff Barba and others similarly situated, by, inter alia, failing to explain the fact that Plaintiff and others similarly situated was not qualified to enter the loan on the terms stated.

c.   Defendant Countrywide Home Loans, Inc., through its agent or agents, concealed the true terms of the loan, and the risks of the transaction, including, but not limited to, the risk of default and the risk of foreclosure, from Plaintiff and similarly situated class members

d.   The monthly payment due under the primary loan issued to Plaintiff Barba was 115% of Plaintiff's monthly income from her social security benefits.  However, Defendant Countrywide, through its agent or agents, informed Plaintiff Barba that she was qualified to make the loan.  This statement was false and was known, or should have been known to Defendant Countrywide Home Loans' agent or agents to be false.  This statement was material to Plaintiff Barba, as she would not have entered the loan without having been told she was qualified for it. Defendant Countrywide, through its agent or agents, also represented to Plaintiff Barba that she would be eligible to refinance the loan in one year after making timely payments, which representation turned out to be false, as when Barba attempted to refinance the loan one year after

taking out the loan, she was informed by Countrywide's representatives that social security payments could not be used as income to qualify for a new loan.  Plaintiff Barba relied on these representations in entering the loan, as evidenced by her signature on the loan documents.

143.     In support of their claim against Defendant WMC Mortgage, Plaintiffs Diaz allege as follows:

a.     Plaintiffs Diaz' loans were originated in October 2006 by Defendant WMC Mortgage.

b.     Defendant WMC Mortgage, through its agent or agents, failed to disclose the material terms of the loan and incidental services to Plaintiffs Diaz and others similarly situated, by, inter alia, failing to explain the fact that Plaintiffs and others similarly situated were not qualified to enter the loans on the terms stated.

c.     Defendant WMC Mortgage, through its agent or agents, concealed the true terms of the loan, and the risks of the transaction, including, but not limited to, negative amortization, prepayment penalty provisions, the risk of default and the risk of foreclosure, from Plaintiffs and similarly situated class members

d.     The combined monthly payment due under the loans issued to Plaintiffs Diaz was approximately 63% of Plaintiffs' 2006 monthly income.  However, Defendant WMC Mortgage, through its agent or agents, informed Plaintiffs Diaz that they were qualified to make the loan.  This statement was false and was known, or should have been known to Defendant WMC Mortgage's agent or agents to be false.  This statement was material to Plaintiffs Diaz, as they would not have entered the loan without having been told they were qualified for it.  Plaintiffs Diaz relied on this representation in entering the loan, as evidenced by their signature on the loan documents.

144.    In support of their claims against Defendant Countrywide Home Loans, Inc., Plaintiffs Wilburn allege as follows:

a.    Plaintiffs Wilburn's loan was originated by Defendant Countrywide Home Loans, Inc. in January 2007.

b.    Defendant Countrywide Home Loans, Inc., through its agent or agents, failed to disclose the material terms of the loan and incidental services to Plaintiffs Wilburn and others similarly situated, by, inter alia, failing to explain the fact that Plaintiffs and others similarly situated were not qualified to enter the loan on the terms stated.

c.    Defendant Countrywide Home Loans, Inc., through its agent or agents, concealed the true terms of the loan, and the risks of the transaction, including, but not limited to, the risk of default and the risk of foreclosure, from Plaintiffs and similarly situated class members

d.    The monthly payment due under the loan issued to Plaintiffs Wilburn was approximately 52% of Plaintiffs' monthly income.  However, Defendant Countrywide, through its agent or agents, informed Plaintiffs Wilburn that they were qualified to make the loan.  This statement was false and was known, or should have been known to Defendant Countrywide Home Loans' agent or agents to be false.  This statement was material to Plaintiffs Wilburn, as they would not have entered the loan without having been told they were qualified for it.  Plaintiffs Wilburn relied on this representation in entering the loan, as evidenced by their signature on loan documents.

145.    Upon information and belief, Defendants Countrywide Home Loans, Inc. and WMC Mortgage knew that the loans would be subject to foreclosure as a result of Plaintiffs' inability to make payments on the loans as the payments escalated during the term of the loans and/or as a result of Plaintiffs' inability to qualify to refinance the loans at a later date after the

payments began to escalate because of changes in the interest rates and the arbitrary increase of payments by the servicers of the loans, and thus the Defendants Countrywide Home Loans, Inc. and WMC Mortgage committed acts which constitute unlawful equity stripping.

146.    Upon information and belief, the escalating payments and/or increases in the interest rate were not properly disclosed to Plaintiffs.

147.    Defendants intended that Plaintiffs would default on the loans and Defendants would be in a position of seizing the homes of the Plaintiffs in foreclosure actions, unlawfully depriving Plaintiffs of their interest in their homes.

148.    As a direct result of the failure to disclose all these matters discussed hereinbefore, the Defendants Countrywide Home Loans, Inc. and WMC Mortgage have caused the Plaintiffs named in this claim for relief damages, pain and suffering, mental anguish and the Plaintiffs were required to retain counsel to prosecute these claims.

149.    Defendants' actions in unlawfully deceiving Plaintiffs into taking the loans alleged herein was willful and wanton, justifying an award of punitive damages.

**<u>SECOND CLAIM FOR RELIEF</u>**
**(Unjust Enrichment)**

**(As to Plaintiff Goodwin Against Ocwen, Aztec Foreclosure Corporation and HSBC Bank, U.S.A.; As to Plaintiff McArtor Against Countrywide Home Loans, Inc. and Recontrust, Old Republic National Title Insurance Company and Bank of New York; As to Plaintiffs Cheney Against IB Property Holdings, LLC; As to Plaintiff Tulip Against Deutsche Bank; As to Plaintiffs Barba and Wilburn against Countrywide Home Loans, Inc. and Recontrust Company, N.A.; As to Plaintiffs Diaz Against WMC Mortgage Corp. and Ocwen; As to Plaintiffs Arevalo, Kluttz, Mullennix, Premo, and Sandborn Against Defendant Recontrust Company, N.A.; As to Plaintiffs Coslow Against Quality Loan Servicing Corp.; As to Plaintiffs Flagg, Horton, Jones, Monahan and Moreno, Stehman, and Thurston Against Wells Fargo Bank, N.A.; As to Plaintiff Gannon Against T. D. Service Company;   As to Plaintiffs Rawlings Against Litton Loan Servicing, L.P.; As to Plaintiffs Mull (fka Robinson and Tovar Against Countrywide Home Loans, Inc. and Recontrust)**

150.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

151.    Defendants' deceptive scheme as alleged herein unjustly enriched Defendants, and each of them, to the detriment of Plaintiffs, and similarly situated class members, by causing Defendants, and each of them, to receive excessive monetary payments from Plaintiffs and the class members and other money or property to which the Defendants were not entitled as follows:

a.    As to Plaintiff Aleta Goodwin, Defendant Aztec Foreclosure Corporation was not the original servicer listed on Plaintiff's loan documents.  Defendant Aztec Foreclosure Corporation has retained monetary benefits related to the servicing of Plaintiff Goodwin's loan and related to the wrongful noticing of a trustee's sale as alleged herein, to which Aztec Foreclosure was not entitled.  Aztec Foreclosure was appointed as a trustee for the purpose of selling Goodwin's property by Defendant MERS.  Defendant MERS had no right to make such appointment, and any monetary benefit to Aztec Foreclosure Corporation was therefore wrongfully obtained.  Further, Defendant HSBC Bank, U.S.A., N.A., as Indenture Trustee for the Registered Note Holders of Renaissance Home Equity Loan Trust 2008-1 purchased the Goodwin property as alleged herein.  Plaintiff Goodwin had no contract with HSBC Bank, U.S.A., N.A., in any capacity.  Defendant HSBC Bank, U.S.A. was not a bona fide purchase of the Goodwin property, and is unjustly enriched by retaining title to Goodwin's property without the lawful right to do so.

b.    As to Plaintiff McArtor, Defendant Recontrust Company was appointed a servicer after the origination of the loan by Greenpoint Mortgage Funding, Inc., wherein Universal American Mortgage Company, L.L.C. was named the original servicer.  At a time subsequent to the October 18, 2004 origination of the McArtor loan, which date is known by Defendant,

Defendant Old Republic National Title Insurance Company was substituted as trustee, which substitution was without authority.  Plaintiff McArtor did not have a contract with Old Republic National Title Insurance Company.  Defendant Old Republic National Title Insurance Company has been unjustly enriched through the sale of Plaintiff's property as alleged herein to Defendant Bank of New York as successor to JP Morgan Chase Bank, N.A. as Trustee for BSALTA 2005-1 ("Bank of New York").  Defendant Bank of New York was not a bona fide purchaser of Plaintiff's property.  Plaintiff has never had a contract with Bank of New York related to the subject property.  Defendant Bank of New York has been unjustly enriched as a result of its purchase of and retention of title to Plaintiff's property.

c.      As to Plaintiffs Cheney, Seaside Trustee was substituted as trustee subsequent to the origination of the Cheney loan on November 30, 2006, which substitution was without authority.  Seaside Trustee unlawfully foreclosed on Plaintiff's property as alleged herein and sold the property to Defendant IB Property Holdings, L.L.C. as alleged herein.   Defendant IB Property Holdings was not a bona fide purchaser of Plaintiff's property.  Plaintiff has never had a contract with IB Property Holdings related to the subject property.  Defendant IB Property Holdings has been unjustly enriched as a result of its purchase of and retention of title to Plaintiff's property.

d.      As to Plaintiff Tulip, Defendant Deutsche Bank purchased the Tulip property at a foreclosure sale which was wrongfully conducted by National Default Servicing Corp.  Plaintiff Tulip did not have a contract with either National Default Servicing Corp. or with Defendant Deutsche Bank.  Defendant Deutsche Bank was not a bona fide purchaser as alleged herein.  Defendant Deutsche Bank has been unjustly enriched as a result of its purchase of and retention of title to Plaintiff's property.

e.      As to Plaintiffs Barba and Wilburn, whose loan contracts were obtained by Countrywide through fraud and misrepresentation as alleged herein, the contracts are void or voidable.  Countrywide has received payments from Plaintiffs Barba and Wilburn.  Because Countrywide obtained the contracts through fraud, any retention of payments made by Plaintiffs Barba and Wilburn is unjust.

f.      As to Plaintiff Arevalo, as alleged herein, MERS assigned its beneficial interest in the loan to Defendant Recontrust Company, N.A.  Plaintiff did not execute a note payable to MERS, and MERS had no beneficial interest in the transaction.  Any assignment of any beneficial interest from MERS to Recontrust was void or voidable.  Plaintiff Arevalo never had a contract with Recontrust.  Any payments retained by Recontrust were wrongfully retained and Recontrust Company, N.A. has been unjustly enriched.

g.      As to Plaintiffs Diaz, whose loan contract was obtained by WMC Mortgage through fraud and misrepresentation as alleged herein, the contract is void or voidable.  WMC Mortgage has received payments from Plaintiffs Diaz.  Because WMC  Mortgage obtained the contract through fraud, any retention of payments made by Plaintiffs Diaz is unjust.

152.    Upon information and belief, Defendants named in the preceding paragraph herein, and each of them, retained and continue to retain ongoing and escalating profits to the detriment of Plaintiffs and each class member, contrary to the fundamental principals of fairness, justice, and good conscience.

153.    Upon information and belief, all payments made to the Defendants servicing the mortgages of the Plaintiffs are not due to the Defendants who are making demands for collection, as no contract existed between Plaintiffs and Defendants listed below, as follows:

a.      Defendants Saxon Mortgage Services, Inc. and Ocwen are, or have been, acting as servicers on the loans issued to Plaintiff Goodwin at a date known to Defendants, but which occurred following the origination of the Goodwin loan in November 2006.

b.      Defendants Countrywide Home Loans and/or  Recontrust is, or has been, acting as a servicer on the loan issued to Plaintiff McArtor following the origination of the loan in October 2004.

c.      Defendant Quality Loan Service Corp. is, or has been, acting as a servicer on the loan issued to Plaintiff Gabel on the Kinglet Drive residence following the origination of the loan in July 2007.

d.      Defendant Recontrust Company is, or has been, acting as a servicer on the loans issued to Plaintiffs Arevalo, Barba, Kluttz, Mullennix, Premo, Sandborn, and Wilburn following the origination of the loans to those plaintiffs in October 2007, April 2007, October 2006, June and October 2005, September 2005, April 2007, and January 2007, respectively.

e.      Defendant Quality Loan Servicing Corp. is, or has been, acting as a servicer on the loan issued to Plaintiffs Coslow following the origination of that loan in November 2005.

f.      Defendant Ocwen is, or has been, acting as a servicer on the loan issued to Plaintiffs Diaz following the origination of the loan in October 2006.

g.      Defendant Wells Fargo Bank, N.A., individually and/or through its subsidiary, ASC, is, or has been, acting as a servicer on the loan issued to Plaintiffs Flagg following the origination of the loan in April 2005.

h.      Defendant T.D. Service Company is, or has been, acting as a servicer for the loan issued to Plaintiff Gannon following the origination of the loan in June 2005.

i.      Defendant Wells Fargo Bank, N.A., individually and/or its subsidiary, ASC, is, or has been, acting as a servicer on the loan issued to Plaintiff Horton following the origination of the loan in December 2005.

j.      Defendant Wells Fargo Bank, N.A. is, or has been, acting as a servicer on the loan issued to Plaintiff Jones following the origination of the loan in November 2006.

Defendant Quality Loan Service Corp. is, or has been, acting as a servicer on the loan issued to Plaintiffs Blake and McKinney following the origination of the loan in July 2005.

k.      Defendant Wells Fargo Bank, N.A., individually and/or through its subsidiary, ASC, is, or has been, acting as the servicer on the loan issued to Plaintiffs Monahan and Moreno following the origination of the loan in September 2005.

l.      Defendant Litton Loan Servicing, L.P. is, or has been, acting as a servicer on the loan issued to Plaintiffs Rawlings following the origination of the loan in January 2006.

m.      Defendant Countrywide Home Loans, Inc. and/or Defendant Recontrust, is, or has been, acting as the servicer on the loan issued to Plaintiff Mull, fka Tonya Dawn Robinson, following the origination of the loan in November 2007.

n.      Defendant Wells Fargo Bank, N.A., individually and/or through its subsidiary, ASC, is, or has been acting as the servicer on the loans issued to Plaintiffs Stehman and Thurston following the origination of the loans in May 2006 and July 2005, respectively.

o.      Defendant Ocwen is, or has been, acting as the servicer on the loan issued to Plaintiffs Sullivan following the origination of the loan in March 2007.

p.      Defendant Countrywide Home Loans, Inc. and/or Defendant Recontrust, is, or has been, acting as the servicer on the loan issued to Plaintiffs Tovar following the origination of the loan in March 2007.

1      q.      Defendant Countrywide Home Loans, Inc. and/or Defendant Recontrust, is,

2  or has been, acting as the servicer on the loan issued to Plaintiffs Wilburn following the

3  origination of the loan in January 2007.

4      154.    The Defendants who have serviced the loans of the Plaintiffs did not fund the loans,

5  and did not loan any money to the Plaintiffs.

6      155.    Upon information and belief, all sums advanced for loans to the Plaintiffs by

7  investors have been repaid, settled, satisfied or otherwise are no longer outstanding.

8      156.    Accordingly, Defendants, and each of them, should be ordered to return all funds

9  

10  obtained as a result of their deceptive scheme to Plaintiffs and class members.

11  **THIRD CLAIM FOR RELIEF**
**(Wrongful Foreclosure)**

12  

13  **(As to Plaintiffs Cheney Against IB Property Holdings; As to Plaintiff Goodwin Against
Aztec Foreclosure Corporation and HSBC Bank, U.S.A.; As to Plaintiff McArtor Against
Old Republic Default Management Services and Bank of New York; As to Plaintiff Tulip
Against National Default Servicing Corporation and Deutsche Bank; As to Plaintiffs
Arevalo, Barba, Kluttz, Mullennix, Premo, Mull (fka Robinson), Tovar, Wilburn and
Sandborn Against Recontrust Company, N.A.; As to Plaintiffs Coslow, Blake and McKinney
and Rawlings Against Quality Loan Service Corp.; As to Plaintiffs Diaz Against Western
Progressive, L.L.C.; As to Plaintiffs Flagg, Horton, Monahan and Moreno, Stehman and
Thurston Against National Default Servicing Corporation; and As to Plaintiff Gannon
Against AHMSI Default Services, Inc. and T. D. Service Company)**

18      157.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set

19  

20  forth in this claim.

21      158.    Pursuant to N.R.S. 107.080, Nevada's nonjudicial foreclosure statute, a power of

22  sale upon default on a note secured by a deed of trust is held by the beneficiary or successor in

23  interest to beneficiary or the trustee.

24  

25

159.    As to each Plaintiff making a claim for wrongful foreclosure, the parties issuing the notice of default and/or issuing a notice of trustee's sale on the property were not the proper parties to do so:

a.    As to Plaintiff Goodwin:

i.    Paragraph 22 of the first deed of trust issued on the Goodwin residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.    The original trustee under the Goodwin first deed of trust was Ticor Title of Nevada and the original Lender was American Home Mortgage.  The Notice of Default was issued by Aztec Foreclosure Corporation, as Trustee, as agent for the Beneficiary, by LPS Default Title and Closing, its agent. The Notice of Trustee's Sale on the Goodwin residence was issued by Aztec Foreclosure Corporation.  None of the parties who noticed and conducted the trustee's sale on the Goodwin residence were the proper parties to conduct a trustee's sale under N.R.S. 107.080, as none were the Lender, the beneficiary, or the Trustee appointed by the Lender.

iii.    On or about May 18, 2009, Aztec Foreclosure Corporation, as Trustee, issued a Trustee's Deed Upon Sale to HSBC Bank, U.S.A., N.A., as Indenture Trustee for the Registered Note Holders of Renaissance Home Equity Loan Trust 2008-1 ("HSBC") following a public auction where HSBC purchased the property for $203,670.00.  As alleged herein, HSBC knew or should have known that the property was not subject to a nonjudicial foreclosure sale because of the status of the underlying loan on the MERS system, and therefore, HSBC was not a bona fide purchaser for value.

b.    As to Plaintiffs Cheney:

i.    Paragraph 22 of the deed of trust issued on the Cheney residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.    The original trustee under the Cheney deed of trust was TCI-Title and Closing, Inc. and the original Lender was At Home Capital.  The Notice of Trustee's Sale on the Cheney  residence was issued by Seaside Trustee Inc.  None of the parties who noticed and conducted the trustee's sale on the Cheney residence were the proper parties to

conduct a trustee's sale under N.R.S. 107.080, as none were the Lender, the beneficiary, or the Trustee appointed by the Lender.

iii.    On October 27, 2008, Seaside Trustee, Inc., acting as trustee, recorded with the Churchill County Recorder a Trustee's Deed Upon Sale related to the Cheney residence which indicated that the property had been sold at a trustee's sale to I.B. Property Holdings, L.L.C., a Delaware Limited Liability Company, for $106,250.00 at a Trustee's Sale, notice of which had been previously recorded with the Churchill County Recorder on September 12, 2008 scheduling the sale for October 3, 2008.  As alleged herein, IB Property Holdings, L.L.C. knew or should have known that the property was not subject to a nonjudicial foreclosure sale because of the status of the underlying loan on the MERS system, and therefore, I.B. Property Holdings, L.L.C. was not a bona fide purchaser for value.

c.    As to Plaintiff McArtor:

i.    Paragraph 22 of the deed of trust issued on the McArtor residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.

ii.    The original trustee under the McArtor deed of trust was Marin Conveyancing Corp.  and the original Lender was GreenPoint Mortgage Funding, Inc. The Notice of Default was issued by Old Republic National Title Insurance Company, as agent

for the Beneficiary, through its Authorized Agent, Marquis Title & Escrow.  The Notice of Trustee's Sale on the McArtor residence was issued by Old Republic Default Management Services.  None of the parties who noticed and conducted the trustee's sale on the McArtor residence were the proper parties to conduct a trustee's sale under N.R.S. 107.080, as none were the Lender, the beneficiary, or the Trustee appointed by the Lender.

iii.     On or about March 31, 2009, Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company, recorded a Trustee's Deed Upon Sale against the McArtor residence.  The Trustee's Deed reflects a conveyance of the McArtor residence to the Bank of New York as successor to JP Morgan Chase Bank, N.A. as Trustee for BSALTA 2005-1 ("Bank of NY") pursuant to Bank of NY having purchased the property for $129,600.00 at a trustee's sale on January 15, 2009.  As alleged herein, Bank of New York knew or should have known that the property was not subject to a nonjudicial foreclosure sale because of the status of the underlying loan on the MERS system, and therefore, Bank of New York was not a bona fide purchaser for value.

d.     As to Plaintiff Tulip:

i.     Paragraph 22 of the deed of trust issued on the Tulip residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true

beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.      The original trustee under the Tulip deed of trust was Stewart Title and the original Lender was New Century Mortgage Corporation. The Notice of Trustee's Sale on the Tulip residence was issued by National Default Servicing Corporation.  None of the parties who noticed and conducted the trustee's sale on the Tulip residence were the proper parties to conduct a trustee's sale under N.R.S. 107.080, as none were the Lender, the beneficiary, or the Trustee appointed by the Lender.

iii.      On or about December 24, 2008, a Trustee's Deed was recorded with the Douglas County Recorder.  Upon information and belief, the property was sold to Deutsche Bank National Trust Company, as Trustee ("Deutsche Bank").  As alleged herein, Deutsche Bank knew or should have known that the property was not subject to a nonjudicial foreclosure sale because of the status of the underlying loan on the MERS system, and therefore, Deutsche Bank was not a bona fide purchaser for value.

e.      As to Plaintiff Arevalo:

i.      Paragraph 18 of the deed of trust issued on the Arevalo residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 20 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The deed of trust contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged

herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii. The original trustee under the Arevalo deed of trust was Stewart Title Company and the original Lender was Universal American Mortgage Company, LLC. The Notice of Default was issued by Recontrust Company, N.A., as agent for the Beneficiary by First American Title, as Agent.  None of the parties who noticed the default and who may attempt to conduct trustee's sale on the Arevalo residence are the proper parties to conduct a trustee's sale under N.R.S. 107.080, as none are the Lender, the beneficiary, or the Trustee appointed by the Lender

f. As to Plaintiff Barba:

i. Paragraph 22 of the deed of trust issued on the Barba residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender could remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property. Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii. The original trustee under the Barba deed of trust was Recontrust Company, N.A. and the original Lender was Countrywide Home Loans, Inc.  The Notice of Trustee's Sale on the Barba residence was issued by Recontrust Company, N.A.  The loan was

securitized and the beneficial interest in the deed of trust was transferred outside of the MERS system at a time after the loan was originated in April 2007, which destroyed Countrywide's standing as a Lender, MER's standing as a beneficiary, and Recontrust's standing as a trustee.  Accordingly, Recontrust Company, N.A. is not a proper party to conduct a trustee's sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

g.      As to Plaintiff Coslow:

i.      Paragraph 22 of the deed of trust issued on the Coslow residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender could remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.      The original trustee under the Coslow deed of trust was First American Title and the original Lender was MILA, Inc. The Notice of Default was issued by Quality Loan Service Corp., As Agent for Beneficiary by LSI Title Company, its Agent.  None of the parties who noticed the default on the Coslow residence and who may attempt to conduct a trustee's sale are the proper parties to conduct a trustee's sale under N.R.S. 107.080, as none were the Lender, the beneficiary, or the Trustee appointed by the Lender.

h.      As to Plaintiffs Diaz:

i.      Paragraph 22 of the deed of trust issued on the Diaz residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender could remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.      The original trustee under the Diaz deed of trust was Westwood Associates and the original Lender was WMC Mortgage Corp. The Notice of Default was issued by Western Progressive, LLC , as agent for the Beneficiary, by Law Offices of Les Zieve, as agent, by LSI Title Company, as Agent.  None of the parties who noticed the default on the Diaz residence and who may attempt to conduct a trustee's sale are the proper parties to conduct a trustee's sale under N.R.S. 107.080, as none were the Lender, the beneficiary, or the Trustee appointed by the Lender.

i.      As to Plaintiffs Flagg:

i.      Paragraph 22 of the deed of trust issued on the Flagg residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may

remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.     The original trustee under the Flagg deed of trust was T.D. Service Company and the original Lender was BNC Mortgage, Inc.  The Notice of Default on the Flagg residence was issued by National Default Servicing Corporation, As Agent for America's Servicing Company.  Neither of the parties listed on the Notice of Default is the proper party to notice a default or to attempt to conduct a trustee's sale under N.R.S. 107.080, as neither is the Lender, the beneficiary, or the Trustee appointed by the Lender.

j.     As to Plaintiff Gannon:

i.     Paragraph 22 of the deed of trust issued on the Gannon residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.     The original trustee under the Gannon deed of trust was Ticor Title of Nevada and the original Lender was American Home Mortgage Acceptance, Inc.  The Notice of Default on the Gannon residence was issued by AHMSI Default Services, Inc., by T.D. Service Company as Agent for the Trustee by LSI Title Company, as Agent.  The Notice of Trustee's Sale on the Gannon residence was issued by AHMSI Default Services, Inc. as Trustee by T.D. Service Company as agent. None of the parties who noticed the trustee's sale on the Gannon residence are the proper parties to conduct a trustee's sale under N.R.S. 107.080, as none are the Lender, the beneficiary, or the Trustee appointed by the Lender.

k.      As to Plaintiff Horton:

i.      Paragraph 22 of the first deed of trust issued on the Horton residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.     The original trustee under the Horton first deed of trust was First American Title and the original Lender was Pacific Crest Savings Bank. The Notice of Default on the Horton residence was issued by National Default Servicing Corp.  National Default

Servicing Corp. is not a proper party to issue a notice of default or to attempt to conduct a trustee's sale on the Horton residence under N.R.S. 107.080, as it was not the Lender, the beneficiary, or the Trustee appointed by the Lender.

l.      As to Plaintiff Jones:

i.      Paragraph 18 of the deed of trust issued on the Jones residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .." Paragraph 20 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee. The deed of trust contains a provision that provides that MERS has the right to foreclose and sell the property. Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.     The original trustee under the Jones deed of trust was Founders Title Company of Nevada and the original Lender was Affordable Interest Mortgage. The Notice of Default on the Jones residence was issued by National Default Servicing Corporation, as Agent for Wells Fargo Bank, N.A. fka Wells Fargo Home Mortgage, Inc., f/k/a Norwest Mortgage inc. by LSI Title Company, as Agent. The Notice of Trustee's Sale on the Jones residence was issued by National Default Servicing Corporation. None of the parties who noticed the default and noticed the trustee's sale on the Jones residence are the proper parties to conduct a trustee's sale under N.R.S. 107.080, as none are the Lender, the beneficiary, or the Trustee appointed by the Lender.

m.      As to Plaintiff Kluttz:

i.      Paragraph 22 of the deed of trust issued on the Kluttz residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to

execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.      The original trustee under the Kluttz deed of trust was North American Title Company and the original Lender was Summit Funding, Inc.  The Notice of Default on the Kluttz  residence was issued by Recontrust Company, N.A., as agent for the Beneficiary by First American Title as Agent.  Recontrust Company, N.A. is not a proper party to issue a notice of default or to attempt to conduct a trustee's sale on the Kluttz residence under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

n.      As to Plaintiffs Blake and McKinney:

i.      Paragraph 22 of the first deed of trust issued on the Blake/McKinney residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.   The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged

herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

        ii.     The original trustee under the Blake/McKinney deed of trust was First American Title and the original Lender was First Horizon Home Loan Corporation.  The Notice of Default on the Blake/McKinney residence was issued by Quality Loan Service Corp., as Agent for Beneficiary by LandAmerica OneStop Inc., as agent.  Quality Loan Service Corp. is not a proper party to issue a notice of default or to attempt to conduct a trustee's sale on the Blake/McKinney residence under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

o.     As to Plaintiffs Monahan and Moreno:

        i.     Paragraph 22 of the deed of trust issued on the Monahan/Moreno residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

        ii.     The original trustee under the Monahan/Moreno deed of trust was John L. Matthews or Timothy M. Bartosh and the original Lender was CTX Mortgage Company, LLC.  The Notice of Default on the Monahan/Moreno residence was issued by National Default Servicing Corporation, as Agent for America's Servicing Company.  The Notice of Trustee's Sale on the Monahan/Moreno residence was issued by National Default

Servicing Corporation.  National Default Servicing Corporation is not a proper party to conduct a trustee's sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

p.        As to Plaintiffs Mullennix:

i.        Paragraph 22 of the deed of trust issued on the Mullennix residence at Lenticular Drive  provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.        The original trustee under the Mullennix Lenticular Drive property deed of trust was Recontrust Company, N.A. and the original Lender was Countrywide Home Loans, Inc.  Recontrust Company, N.A. issued a Notice of Default and a Notice of Trustee's Sale related to the deed of trust on the Lenticular Drive property.   The loan was securitized and the beneficial interest in the deed of trust was transferred outside of the MERS system at a time after the loan was originated in June 2005, which destroyed Countrywide's standing as a Lender, MER's standing as a beneficiary, and Recontrust's standing as a trustee.  Accordingly, Recontrust Company, N.A. is not a proper party to conduct a trustee's sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

q.      As to Plaintiff Parece:

i.      Paragraph 18 of the deed of trust issued on the Parece residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 20 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The deed of trust contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.     The original trustee under the Parece deed of trust was Western Title Company, Inc. and the original Lender was Taylor Bean and Whitaker Mortgage Corp. The Notice of Default on the Parece residence was issued by MTC Financial, Inc. dba Trustee Corps as Agent for Mortgage Electronic Registration Systems, Inc. as Nominee for Taylor, Bean & Whitaker Mortgage Corp.  The Notice of Trustee's Sale on the Parece residence was issued by MTC Financial, Inc. dba Trustee Corps.  Upon information and belief, the loan was securitized and the beneficial interest in the deed of trust was transferred outside of the MERS system at a time after the loan was originated in December 2007, which destroyed Taylor Bean & Whitaker's standing as a Lender, and MER's standing as a beneficiary.  Accordingly, MTC Financial, Inc. dba Trustee Corps is not a proper party to conduct a trustee's sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

r.      As to Plaintiffs Premo:

i.      Paragraph 22 of the deed of trust issued on the Premo residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.      The original trustee under the Premo deed of trust was Recontrust Company, N.A. and the original Lender was Countrywide Home Loans, Inc.   Recontrust Company, N.A. issued a Notice of Default on the Premo residence.  The loan was securitized and the beneficial interest in the deed of trust was transferred outside of the MERS system at a time after the loan was originated in September 2005, which destroyed Countrywide's standing as a Lender, MER's standing as a beneficiary, and Recontrust's standing as a trustee.  Accordingly, Recontrust Company, N.A.  is not a proper party to notice a default or attempt to conduct a trustee's sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

s.      As to Plaintiffs Rawlings:

i.      Paragraph 22 of the deed of trust issued on the Rawlings residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of

trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.      The original trustee under the Rawlings deed of trust was Timothy M. Bartosh or William B. Naryka and the original Lender was CTX Mortgage Company. The Notice of Default on the Rawlings residence was issued by Quality Loan Service Corp., as Agent for Beneficiary by LSI Title Company.  The Notice of Trustee's Sale on the Rawlings residence was issued by Quality Loan Service Corp.  Quality Loan Servicing Corp. is not a proper party to conduct a trustee's sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

t.      As to Plaintiff Mull, fka Robinson:

i.      Paragraph 22 of the deed of trust issued on the Robinson residence (subsequently transferred to Tonya Dawn Mull as her sole and separate property) provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.     The original trustee under the Robinson deed of trust was Greenhead

Investments, Inc. and the original Lender was Sierra Pacific Mortgage Company, Inc.  The

Notice of Default on the Robinson (kna Mull) residence was issued by Recontrust

Company, N.A. as agent for the Beneficiary by First American Title, as Agent. Recontrust

Company, N.A. is not a proper party to notice a default or to attempt to conduct a trustee's

sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed

by the Lender.

u.     As to Plaintiff Sandborn:

i.     Paragraph 18 of the deed of trust issued on the Sandborn residence provides

that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to

execute written notice of the occurrence of an event of default and of Lender's election to

cause the Property to be sold, . . .."  Paragraph 20 of the deed of trust provides that the

Lender may remove the Trustee and appoint a successor trustee.  The deed of trust contains

a provision that provides that MERS has the right to foreclose and sell the property.  Any

appointment by MERS of a successor trustee or any assignment to a successor beneficiary

was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged

herein, MERS disclaims any right to any interest in the property or the proceeds of the

loan.

ii.     The original trustee under the Sandborn deed of trust was Stewart Title

Company and the original Lender was Universal American Mortgage Company of

California.  The Notice of Default on the Sandborn residence was issued by Recontrust

Company, N.A. as agent for the Beneficiary by First American Title, as Agent. Recontrust

Company, N.A. is not a proper party to notice a default or to attempt to conduct a trustee's

sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed

by the Lender.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

     v.       As to Plaintiff Stehman:

        i.       Paragraph 22 of the deed of trust issued on the Stehman residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

        ii.     The original trustee under the Stehman deed of trust was Western Title and the original Lender was Preferred Financial Group, Inc. dba Preferred Mortgage Services. The Notice of Trustee's Sale on the Stehman residence was issued by National Default Servicing Corporation.  National Default Servicing Corporation is not a proper party to conduct a trustee's sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

     w.      As to Plaintiffs Thurston:

        i.       Paragraph 22 of the deed of trust issued on the Thurston residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a

successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.      The original trustee under the Thurston deed of trust was First American Title Co and the original Lender was Fremont Investment & Loan.  The Notice of Trustee's Sale on the Thurston residence was issued by National Default Servicing Corporation. National Default Servicing Corporation is not a proper party to conduct a trustee's sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

x.      As to Plaintiffs Tovar:

i.      Paragraph 22 of the deed of trust issued on the Tovar residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .."  Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee.  The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property.  Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.      The original trustee under the Tovar deed of trust was Western Title Company and the original Lender was Wilson Resources, Inc.  The Notice of Trustee's Sale on the Tovar  residence was issued by Recontrust Company, N.A. as Trustee. Recontrust Company, N.A. is not a proper party to notice a default or to attempt to conduct

a trustee's sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

y.     As to Plaintiffs Wilburn:

i.     Paragraph 22 of the deed of trust issued on the Wilburn residence provides that if the "Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, . . .." Paragraph 24 of the deed of trust provides that the Lender may remove the Trustee and appoint a successor trustee. The section of the deed of trust entitled "Transfer of Rights in the Property" contains a provision that provides that MERS has the right to foreclose and sell the property. Any appointment by MERS of a successor trustee or any assignment to a successor beneficiary was invalid, as MERS is not a true beneficiary under the deed of trust because, as alleged herein, MERS disclaims any right to any interest in the property or the proceeds of the loan.

ii.     The original trustee under the Wilburn deed of trust was Recontrust Company, N.A. and the original Lender was Countrywide Home Loans, Inc. Recontrust Company, N.A. issued a Notice of Default on the Wilburn residence. The loan was securitized and the beneficial interest in the deed of trust was transferred outside of the MERS system at a time after the loan was originated in January 2007, which destroyed Countrywide's standing as a Lender, MER's standing as a beneficiary, and Recontrust's standing as a trustee. Accordingly, Recontrust Company, N.A. is not a proper party to notice a default or attempt to conduct a trustee's sale under N.R.S. 107.080, as it is not the Lender, the beneficiary, or the Trustee appointed by the Lender.

160.    As set forth in detail above as to each plaintiff making a claim for wrongful foreclosure, the party who noticed the sale was not the beneficiary (MERS).  Rather, the party was a stranger to the transaction with no beneficial interest in the deed of trust or the note.

161.    As alleged herein, each deed of trust at issued named MERS as the  beneficiary on the deed of trust, but the MERS website instructs that MERS will hold no beneficial interest.

162.    As alleged herein, each of the named plaintiffs' notes were transferred without the deed of trust outside the MERS system.  Such transfer rendered each Plaintiff's note unsecured and the property unsecured and not subject to a nonjudicial foreclosure sale.

163.    At or following an alleged default, the beneficial interest in the deed of trust (which MERS disclaims) was transferred by MERS to a party who was not the holder of the note and had no authority from the holder of the note to either declare the default or initiate the foreclosure, but foreclosure occurred and, as to Plaintiffs Cheney, Goodwin and McArtor, as alleged herein, the property was sold to a party who cannot qualify as a bona fide purchaser for value.

164.    The obligations of each of the Plaintiffs named in this claim for relief on which each of the Defendants named in this claim for relief have declared a default were discharged when the investors in the mortgage backed securities claims were paid as a result of over-collateralization of the obligations and/or credit default swaps and/or federal bailout funds and other monies paid to the investors who owned the notes and obligations and/or to the named Defendants or bank holding companies who disbursed the monies in such fashion as to extinguish the obligations of Plaintiffs to repay the monies they borrowed which are at issue herein.

165.    Neither the investors in the mortgage backed securities nor any other entity or person who had a right to payment from the borrowers or was a beneficiary under the deeds of trust ever declared a default of the notes executed by Plaintiffs.

166.    The Defendants described in this claim for relief as being the parties issuing the notices of default have no contract with the Plaintiffs, no investment in the mortgage backed securities, and no right to declare a default on the note.  Therefore, any statement that "the beneficiary has declared a default and directed that the property be sold" is not true, and the Defendants named in this claim for relief who have made that false representation knew or should have known at the time each and every such notice was executed, mailed and recorded that those allegations were false.

167.    Foreclosure against the properties of the Plaintiffs cannot commence without a written declaration of default and direction to the trustee to sell the property made by the persons or entities to whom the obligation under the notes are owed.

168.    As a direct and proximate result of the unlawful and wrongful commencement and advancement of foreclosure proceedings by Defendants complained of herein, the Plaintiffs who have been subjected to such actions by Defendants have suffered damages, including, without limitation, economic damages, severe and disabling psychological and physical pain and suffering, humiliation, embarrassment, damage to credit and other damages as alleged herein.

169.    Plaintiffs have been required to retain counsel and expend costs to prosecute this claim for relief.

**FOURTH CLAIM FOR RELIEF**
**(Slander of Title)**

**(As to Plaintiffs Cheney, Goodwin, McArtor and Tulip Against Defendants Aztec Foreclosure Corporation, Old Republic Default Management Services, National Default Servicing Corporation, HSBC, Bank of New York, IB Property Holdings, and Deutsche Bank National Trust Company)**

170.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

171.    Plaintiffs Cheney had an ownership interest in the title to their residence as described herein.

172.    On or about October 27, 2008, Seaside Trustee, Inc., with the knowledge of and/or at the direction of Defendant IB Property Holdings, caused to be recorded a Trustee's Deed Upon Sale related to the Cheney residence showing that the property had been conveyed to Defendant IB Property Holdings, LLC.

173.    As alleged herein, any purported transfer of any interest in the Cheney residence was wrongful and invalid because the trustee's sale to IB Property Holdings, LLC was not conducted in accordance with N.R.S. 107.080 and pursuant to Nevada common law, and IB Property Holdings, L.L.C. knew or should have known that such transfer was wrongful and invalid.  Any publication of an ownership interest in the Cheney property claimed by IB Property Holdings, LLC was therefore false.

174.    The recording of the Trustee's Deed Upon Sale published the information to third parties.

175.    As a result of said wrongful publication of an ownership interest in the Cheney property, Plaintiffs Cheney have incurred and will continue to incur attorneys' fees and costs related to this litigation, in an amount to be proven at trial.

176.    Plaintiff Goodwin had an ownership interest in the title to her residence as described herein.

177.    On or about May 18, 2009, Defendant Aztec Foreclosure Corporation, with the knowledge of and/or at the direction of Defendant HSBC Bank, U.S.A., N.A., caused to be recorded a Trustee's Deed Upon Sale related to the Goodwin residence showing that the property had been conveyed to Defendant HSBC Bank, U.S.A., N.A.

178.    As alleged herein, any purported transfer of any interest in the Goodwin residence was wrongful and invalid because the trustee's sale to HSBC Bank, U.S.A., N.A. was not conducted in accordance with N.R.S. 107.080 and pursuant to Nevada common law, and HSBC Bank, U.S.A., N.A. knew or should have known that such transfer was wrongful and invalid.  Any publication of an ownership interest in the Goodwin property claimed by HSBC Bank, U.S.A., N.A. was therefore false.

179.    The recording of the Trustee's Deed Upon Sale published the information to third parties.

180.    As a result of said wrongful publication of an ownership interest in the Goodwin property, Plaintiff Goodwin has incurred and will continue to incur attorneys' fees and costs related to this litigation, in an amount to be proven at trial.

181.    Plaintiff McArtor had an ownership interest in the title to his residence as described herein.

182.    On or about March 31, 2009, Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company, with the knowledge of and/or at the direction of Defendant Bank of New York, caused to be recorded a Trustee's Deed Upon Sale related to the McArtor residence showing that the property had been conveyed to Defendant Bank of New York.

183.    As alleged herein, any purported transfer of any interest in the McArtor residence was wrongful and invalid because the trustee's sale to Bank of New York was not conducted in accordance with N.R.S. 107.080 and pursuant to Nevada common law, and Bank of New York knew or should have known that such transfer was wrongful and invalid.  Any publication of an ownership interest in the McArtor property claimed by Bank of New York was therefore false.

184.    The recording of the Trustee's Deed Upon Sale published the information to third parties.

185.    As a result of said wrongful publication of an ownership interest in the McArtor property, Plaintiff McArtor has incurred and will continue to incur attorneys' fees and costs related to this litigation, in an amount to be proven at trial.

186.    Plaintiff Tulip had an ownership interest in the title to his residence as described herein.

187.    On or about December 24, 2008, Defendant National Default Servicing Corporation, with the knowledge of and/or at the direction of Defendant Deutsche Bank National Trust Company, caused to be recorded a Trustee's Deed Upon Sale related to the Tulip residence showing that the property had been conveyed to Defendant Deutsche Bank National Trust Company.

188.    As alleged herein, any purported transfer of any interest in the Tulip residence was wrongful and invalid because the trustee's sale to Deutsche Bank National Trust Company was not conducted in accordance with N.R.S. 107.080 and pursuant to Nevada common law, and Deutsche Bank National Trust Company knew or should have known that such transfer was wrongful and invalid.  Any publication of an ownership interest in the Tulip property claimed by Deutsche Bank National Trust Company was therefore false.

189.    The recording of the Trustee's Deed Upon Sale published the information to third parties.

190.    As a result of said wrongful publication of an ownership interest in the Tulip property, Plaintiff Tulip has incurred and will continue to incur attorneys' fees and costs related to this litigation, in an amount to be proven at trial.  Additionally, Plaintiff Tulip vacated the subject

property as a result of Defendant Deutsche Bank's issuance of a three-day notice to quit and Deutsche Bank's sale of the subject property to a subsequent purchaser.  As a result, Plaintiff Tulip has incurred moving expenses and expenses for replacement housing in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
**(Wrongful Filing of Unlawful Detainer)**

**(As to Plaintiff Gable Against Saxon Mortgage Services, Inc. Only)**

191.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

192.    NRS 107.080(1) gives the trustee of a deed of trust securing the performance of an obligation or the payment of a debt relating to real property the power of sale of that real property upon a breach of the obligation.  However, NRS 107.080(2) mandates that notice of the breach and election to sell the property to satisfy the obligation must be recorded in the recorder's office of the county wherein the trust property is situated, and the power of sale must not be exercised until at least three (3) months have passed since the notice was recorded.

193.    NRS 107.080(3) further mandates that the notice of default and election to sell must be mailed via registered or certified mail, with return receipt requested and postage prepaid to the grantor of the deed of trust securing the obligation or debt relating to the real property.

194.    NRS 107.080(4) provides that once the 3 month period after notice of breach and election to sell the trust property has lapsed, the trustee or other person authorized to sell the property must notify the trustor of the time and place at which the trustee's sale will be conducted.

195.    No notice of default and election to sell Plaintiff Heather Gabel's property located at 1447 Kinglet Drive was ever recorded in the recorder's office of Washoe County, the county in which the property is situated.

196.     No notice of default and election to sell the property located at 1447 Kinglet Drive was mailed to Plaintiff Heather Gabel via registered or certified mail.

197.     Plaintiff Heather Gabel was never notified of the time and place at which a trustee's sale of the property located at 1447 Kinglet Drive would be conducted.

198.     The property located at 1447 Kinglet Drive was never sold at trustee's sale.

199.     Plaintiff Heather Gabel still holds title to the property 1447 Kinglet Drive.

200.     Defendant Saxon Mortgage Services, Inc. wrongfully served Plaintiff Heather Gabel with a notice to quit the premises at 1447 Kinglet Drive and wrongfully filed an unlawful detainer action against her, as the basis for such actions were without any grounds in fact or law.

201.     Plaintiff Heather Gabel has suffered from damage, loss and harm, including but not limited to, mental anguish and reasonable attorneys' fees and costs incurred in defending the abusive unlawful detainer action and in bringing this action.

202.     Plaintiff Heather Gabel's said damage, loss, and harm were the proximate and legal result of the actions of Saxon Mortgage Services, Inc. as described herein.

**<u>SIXTH CLAIM FOR RELIEF</u>**
**(Conspiracy To Commit Fraud Related To MERS System)**

**(As to Defendants MERSCORP, INC., MERS, INC., Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Mortgage Corporation,  U.S.A., Wells Fargo Bank, N.A., GE Money Bank, Bank of America, N.A., AIG United Guaranty Corporation, PNC Financial Services Group, Inc., National City Corporation, National City Bank, Deutsche Bank, WMC Mortgage Corporation, Litton Loan Servicing, L.P., and Saxon Mortgage, Inc.)**

203.     Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

204.     Upon information and belief, Defendants MERSCORP, Inc., MERS, Inc., Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, J.P. Morgan Chase Bank,

N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Bank, U.S.A., Wells Fargo Bank, N.A., GE Money Bank, Bank of America, N.A., AIG United Guaranty Corporation, PNC Financial Services Group, Inc., National City Corporation, National City Bank, Deutsche Bank, WMC Mortgage Corporation, Litton Loan Servicing, L.P., and Saxon Mortgage, Inc. (hereinafter in this Sixth Claim for Relief collectively referred to for purposes of this Sixth Claim as the "Defendant conspirators"), and each of them, did knowingly and willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate and actively engage in fraudulent and predatory lending practices perpetrated on Plaintiffs as alleged herein by the actions of the Defendant conspirators as part of the business policies and practices of each Defendant conspirator in participating in the MERS system.

205.    Upon information and belief, the Defendant conspirators are or have been shareholders in MERSCORP, Inc., MERS, Inc. and/or members of the MERS system, and, as to Defendant conspirators, Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, and J.P. Morgan Chase Bank, N.A., have, through their employees and agents, served as members of the Board of Directors of MERSCORP, Inc. and/or MERS, Inc., and participated in the design and coordination of the MERS system described in this complaint

206.    Defendants' participation as shareholders, directors, operators, or members of MERSCORP, Inc. and/or MERS, Inc. are as follows:

a.    Defendants J.P. Morgan Chase Bank, CitiMortgage, Inc., Countrywide Home Loans, Inc., Fannie Mae, Freddie Mac, Merrill Lynch, AIG United Guaranty Corporation, and Wells Fargo Bank, N.A. are each Shareholders of MERSCORP, Inc.

b.       MERSCORP, Inc.  is the operating company that owns and operates the MERS System described herein, and is the parent company of Mortgage Electronic Registration Systems, Inc. ("MERS, Inc.").

c.       Defendants Freddie Mac, MERSCORP, Inc., National City Mortgage, Fannie MAE, and AIG United Guaranty Corporation are directors of MERS, Inc. and/or MERSCORP, Inc.

d.       Defendants Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, National City Bank, National City Corporation, PNC Financial Services Group, J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Mortgage Corporation, U.S.A., GE Money Bank, Bank of America, N.A., Wells Fargo Bank, N.A., AIG United Guaranty Corporation, WMC Mortgage Corporation, Litton Loan Servicing, L.P., and Saxon Mortgage Services, Inc. are Members of MERS, Inc.

207.    Whenever this Complaint refers to any corporation's act, deed, or transaction, it means that such corporation engaged in the act, deed, or transaction by or through its members, officers, directors, agents, employees, or other representatives while they actively were engaged in the management, direction, control, or transaction of its business or affairs.

208.    Beginning at a time unknown to the Plaintiffs, prior to 2004, and continuing through at least the present, the Defendant co-conspirators engaged in a conspiracy to unlawfully deprive borrower-homeowners of property in numerous states through issuing predatory loans as described herein, and through securitization and subsequent processes described herein.

209.    MERS, Inc. and/or MERSCORP, Inc. arranged for bilateral and multilateral meetings, bilateral and multilateral teleconferences, and bilateral internet communications with potential Shareholders, actual Shareholders, candidates for Membership, and Members.

210.     Upon information and belief, the Defendant conspirators have conspired among themselves and with other unknown parties to:

a.      develop a system of earning profits from the origination and securitization of residential loans without regard for the rights of Plaintiffs, and others similarly situated, by engaging in predatory and deceptive residential lending practices as alleged in this complaint above; and

b.      in furtherance of the system referred to immediately above, the Defendant conspirators intentionally created, managed, operated and controlled the Defendants MERSCORP, Inc. and MERS, Inc. for the specific purpose of MERS, Inc. being designated as a sham "beneficiary" in the original deeds of trust securing those loans, including the loan made to Plaintiffs and other similarly situated individuals by Countrywide Home Loans, Inc. and

c.      Defendant conspirators intentionally created, managed, operated and controlled the MERS system with the unlawful intent and for the unlawful purpose of making it difficult or impossible for Plaintiffs and other victims of such industry-wide predatory policies and practices to identify and hold responsible the persons and entities responsible for the unlawful actions of Defendant Countrywide Home Loans, Inc., MERS, Inc., HSBC, GE Money Bank, WMC Mortgage Corporation and their co-conspirators.

211.     Upon information and belief, Defendant conspirators, through creation of the MERS system alleged herein, adopted and implemented residential lending underwriting guidelines for use in Nevada and in other states which:

a.      were intended to, and did, generate unprecedented profits for the Defendant conspirators and their co-conspirators at the expense of Plaintiffs and other persons who were fraudulently induced by the Defendant conspirators and their co-conspirators into taking out

residential loans that were known by the Defendant conspirators and their co-conspirators, at the time the loans were originated, and

b.       were likely to result in foreclosure on those loans and loss by Plaintiffs and other borrowers of their homes, with reckless disregard and intentional indifference by the Defendant conspirators and their co-conspirators of the likelihood of such foreclosure.

212.   Removing real estate transaction records from the public record maintained by the county clerks prevents oversight of real estate transactions by the public and by public officials.

213.   MERSCORP, Inc. informed its co-conspirators that using the MERS system would remove transaction records from the public record.

214.   MERSCORP, Inc. and/or MERS, Inc. have publicly stated the following:

a.       "MERS eliminates the need to prepare and record assignments when trading residential and commercial mortgage loans."

b.       "With the recording of the security instrument(s), MERS becomes the mortgagee in the county land records and no assignments are required during a subsequent sale and transfer of the loan between MERS members."

c.       "There is no dependency on the corporate name you use on closing documents and the corresponding corporate name on the MERS System because the MERS System is not the legal system of record of ownership of mortgage loans."

215.   Upon information and belief, the MERS system was created for the unlawful purpose of hiding and insulating the brokers and originators of predatory toxic loans from accountability and liability by creating an entity which simultaneously informed all lenders who originated loans that named MERS as the beneficiary of the following:

a.      MERS would never own or acquire any actual beneficial interest in any loan in which it was named as beneficiary under the deed of trust, and that

b.      MERS could be named as beneficiary for purposes of public notice and notice to the borrower and would act in that capacity if so designated by the lender who originated the loan.

216.    Upon information and belief, the intent and purpose of the Defendant conspirators and their co-conspirators in the creation, management, operation and control of MERS was, without limitation, to make it impossible for the borrowers, their attorneys, the courts, the government, and anyone other than the Defendant conspirators who created and controlled MERS to identify the actual beneficial owner of any particular loan or the property which was the collateral securing that loan until such time, if any, that foreclosure action was initiated.    As a result, Plaintiffs, and other similarly situated individuals, were deprived of the right to attempt to modify their toxic loans, as the true identity of the actual beneficial owner was intentionally hidden from Plaintiffs and other similarly situated individuals.

217.    MERSCORP, Inc.'s marketing materials also promise Members with assistance with foreclosures.  MERSCORP, Inc. and/or MERS, Inc. have publicly stated:  "MERS has assembled a Foreclosure Manual to provide a state-by-state guideline for our Members to follow when foreclosing a mortgage loan in the name of MERS."

218.    Upon information and belief, the Defendant conspirators' actions in creating the MERS system, which was dependent on fraudulent and deceptive practices that included, but were not limited to, making loans to consumers such as Plaintiffs in violation of the Nevada Uniform Lending Practices Act and the Fair Housing Act, and other federal laws related to residential

mortgage lending, created a system to unlawfully deprive Plaintiffs of their interest in their Residences.

219.   MERSCORP, Inc. and/or MERS, Inc. offered Members increased profit. MERSCORP, Inc. has publicly stated:

      a.   "The MERS web site enables you to target directly your MERS® Ready products and services to MERS members."

      b.   "Commercial originators and issuers save **hundreds to thousands of dollars** (in the case of cross-collateralized loans) in preparing and recording assignments. Where the originator has not recorded a MERS as Original Mortgagee (MOM) security instrument, the issuer saves the costs of assigning to the Trust by having the originator assign to MERS."  (Emphasis added).

      c.   "It will reduce risk and generate more profits for lenders because the Notes registered on it will be in electronic format. ***It shortens the timeframe between the closing and the securitization of the loan***, enabling the Note to move instantly, creating faster funding." (Emphasis added).

220.   MERSCORP, Inc.'s rules and by-laws, to which MERS Members agree, require the following:

> **BY COMPLETING, SIGNING, AND SUBMITTING THIS APPLICATION, THE APPLICANT IS AGREEING TO BE A MERS MEMBER. THE APPLICANT HEREBY AGREES TO PAY ALL FEES AND EXPENSES SET FORTH IN THE MERS RESIDENTIAL FEE SCHEDULE, WHICH MAY CHANGE FROM TIME TO TIME; ABIDE BY ALL EXISTING MERS RULES AND PROCEDURES, WHICH ARE INCORPORATED HEREIN BY REFERENCE AND MAY BE AMENDED FROM TIME TO TIME; AND COMPLY WITH THE TERMS AND CONDITIONS SET FORTH IN THE ATTACHED ADDENDUM ENTITLED TERMS AND CONDITIONS.**

(Emphasis in original).

221.    The MERSCORP, Inc. rules and by-laws, to which MERS Members agree, cannot be carried out lawfully because they require the following:

> 1. **MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc.**, and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request. The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party. The Member shall be bound by any amendment to any of the Governing Documents.  2. **The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan** that the Member registers on the MERS® System. **MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee**, in an administrative capacity, for the beneficial owner or owners thereof from time to time. **MERS shall have no rights whatsoever** to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. **MERS agrees not to assert any rights** (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.  *** 6. MERS and the Member agree that: (i) **the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans**, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System."

(Emphasis added).

222.    The times, dates, and locations of the various meetings and communications among and between the conspirators are solely within the knowledge of the conspirators and have not been made public by MERS or its co-conspirators.

223.    In addition to the allegations made related to the shareholder, director, and creator conspirators, the MERS system conspiracy consisted of:

a.      The Lender conspirators who agreed to procure loans by means of  violation of state and Federal lending laws, as further described in the previous claims for relief.

b.      The Lender, Securitizer and Servicer conspirators who agreed to use the MERS system unlawfully and in violation of state and Federal laws to deceive homeowners and securities purchasers by misleading them to believe that the conspirators had legal authority to foreclose when in fact, the conspirators do not have legal authority to foreclose on loans which were made part of the MERS system, as further described in the previous claims for relief.

c.      The Securitizer conspirators who were aware of these violations of law during procurement and agreed to purchase the loans knowing that the law had been violated.

d.      The Securitizer conspirators who, upon information and belief, packaged and sold loans knowing that such loans were based on deeds of trust that had been split from the notes, and based on loans that had been sold as part of the securitization process before the loans were finalized with the borrowers.  Thereafter, the purported interest in the obligation, the note as evidence of the obligation, and the security interest for the obligation were transferred multiple times without recording the change in ownership of an interest in real property in the appropriate county records.  This was accomplished by the creation of the private parallel record keeping service known as the MERS system, whereby MERS, Inc. is named in the deed of trust which is supposed to be the security for the underlying loan obligation.  MERS is named as the nominee of the lender, but not as the holder of the note or the actual lender.  Rather, MERS is named as beneficiary for the purpose of deceiving  the borrower and the clerk's office where the deed of trust is recorded.

e.      A securitization process that was based on loans that were made based on residential loan underwriting guidelines that were designed to generate as many loans as possible

to fuel the securitization process to feed the demand for mortgage-backed securities, the faulty and toxic nature of which loans was hidden by the MERS system.  As a result of MERS being named the beneficiary, and through the processes described herein, the note and deed of trust are "split."  When the note is split from the deed of trust, then the note becomes unsecured and a person holding only the note lacks the power to foreclose and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it.  The monetary effect of utilizing the MERS system, in addition to the allegations set forth otherwise herein, was to hide profits and fees that were not disclosed to the borrower or to the investor in the note, which, in some cases, upon information and belief, were in excess of the principal value stated on the note.

       f.     The Securitizer conspirators who violated state and Federal securities laws through their descriptions of the financial derivatives created by the conspiracy.

       g.     The Lender conspirators who agreed to supply loans to the Securitizers despite knowledge that the Securitizers would sell them in violation of the law.

       h.     The Servicer conspirators who agreed to unlawfully foreclose on loans despite the separation of the loan from the deed of trust which made the foreclosure unlawful because the debt was no longer secured.

224.    All of the conspirators agreed to the participation of the other conspirators in their individual roles in the conspiracy.  The loan files of each of the loans disclose the legal violations and document that the Lenders agreed to purchase loans from third party originators and to sell them to the Securitizers.  The Securitizers agreed to purchase the loans and pool them with full knowledge of the contents of the loan files.  The Servicers agreed to foreclose with full knowledge of the loan file for each loan.

225.    All of the conspirators continued to agree to the conspiracy over the course of thousands of transactions.

226.    Defendants Fannie Mae, Freddie Mac, J.P. Morgan Chase Bank, N.A., GMAC Mortgage, L.L.C., and National City Mortgage acted as Creators of the conspiracy.  They created MERS to hide their own unlawful activity as well as the activities of the co-conspirators.

227.    Defendants Countrywide Home Loans, Inc., National City Corporation, National City Bank, HSBC Mortgage Corporation, U.S.A., GMAC Mortgage, L.L.C., National City Mortgage, CitiMortgage, Inc., WMC Mortgage Corporation, GE Money Bank, Wells Fargo Bank, N.A., J.P. Morgan Chase, and Bank of America, N.A. acted as Lenders in the conspiracy.

228.    Defendants J.P. Morgan Chase, Merrill Lynch, Wells Fargo Bank, N.A., Bank of America, HSBC Mortgage Corporation, U.S.A., GMAC Mortgage, L.L.C., PNC Financial Services Group, Inc., National City Corporation, National City Mortgage,  National City Bank, Countrywide Home Loans, Inc., CitiMortgage, Deustche Bank, and GE Money Bank acted as Securitizers in the conspiracy.

229.    Defendants Countrywide Home Loans, Inc., Bank of America, Wells Fargo Bank, N.A., GMAC Mortgage, L.L.C., CitiMortgage, Inc., National City Mortgage, HSBC Mortgage Corporation, U.S.A., J.P. Morgan Chase, WMC Mortgage Corporation, Litton Loan Servicing, L.P., and Saxon Mortgage Services, Inc. acted as Servicers in the conspiracy.

230.    For the purpose of forming and effectuating this conspiracy, Defendants and co-conspirators did the following things, among others:

        a.    The Defendants acting as Lenders described above systematically and repeatedly violated Federal and state lending laws in order to originate mortgages, as described in the previous claims for relief;

1          b.      The Defendants acting as Securitizers knowingly and by agreement

2    purchased the unlawfully obtained mortgages from the Lenders;

3          c.      The Defendants acting as Lenders, Securitizers and Servicers utilized and

4    benefited from the MERS system as a means of preventing detection by law enforcement or by the

5    public and as a means of unlawful foreclosure to the detriment of homeowners;

6          d.      The Defendants acting as Lenders and Securitizers, with knowledge and

7    agreement of the co-conspirators, utilized the MERS system in such a manner as to split the

8    promissory note from the mortgage or deed of trust and thereby destroy the note holders' security,

9    nevertheless proceeding with unlawful foreclosure actions to the detriment of homeowners;

10         e.      All Defendants named herein as co-conspirators profited from their

11   respective roles in originating loans, selling them, and pooling their MERS registered home loans

12   together in large bundles which were sold and turned into financial derivative instruments;

13         f.      The mortgage securitization process became known in financial industry

14   parlance as "slicing and dicing." The slicing and dicing results in a pool of mortgages which have

15   lost their individual characteristics but which have a high value to those who create them;

16         g.      The Defendants acting as Securitizers named herein purchased mortgages

17   from the Defendants acting as Lenders named herein for securitization;

18         h.      The Defendants named as Securitizers herein sold the securitized and

19   pooled mortgages as asset backed financial derivatives with affirmative claims that Defendants

20   were unaware of any legal issues which would affect the value of the assets backing the securities,

21   which was untrue, as Defendants actually knew or should have known that the mortgages were

22   unlawfully obtained and subject to rescission, and knew or should have known that the mortgages

1  and promissory notes had been split and therefore the note holder no longer had the right to

2  foreclose, assuming that it ever did;

3         i.     The Defendants described herein as Servicers unlawfully foreclosed on

4  homeowners' properties.  The Servicers misrepresented that they had the legal right to foreclose,

5  when, in fact, they did not.  The Servicers' foreclosures illegally deprived homeowners of

6  property;

7         j.     All Defendants named as MERS members agreed to promote MERS, an

8  ostensibly lawful business, and to utilize MERS in an unlawful manner to deprive Plaintiffs and

9  those similarly situated of property.

10

11         231.   The securitization process took distinct loans, deeds of trust, and mortgages, and

12  pooled them together in such a manner that they lost their unique identity.  Hundreds of such

13  financial derivative instruments were created by the co-conspirator Defendants.  The co-

14  conspirators all profited from their respective roles in the process, including, but not limited to, the

15  following pooling agreements:

16         a.     Defendant and co-conspirator Wells Fargo Bank, N.A. is the master servicer

17  of the HSI Asset Loan Obligation Trust 2007-2.  Approximately 18% of the mortgages in that loan

18  pool were originated by Defendant Countrywide Home Loans, Inc.  Approximately 26% of the

19  mortgages in that pool originated from HSBC Mortgage Corporation (USA).   HSBC Mortgage

20  Corporation (USA) profited from packaging its loans together with those of Defendant and co-

21  conspirator Countrywide Home Loans, Inc.

22

23         b.     The HSI Asset Loan Obligation Trust 2006-2, was sponsored and sold by

24  HSBC Bank.  Countrywide Home Loans, Inc. originated 13% of the loans in this instrument.

25

HSBC Mortgage Corporation (USA) originated 15% of the loans in this instrument.  HSBC Mortgage Corporation (USA) is one of the servicers of this financial derivative instrument.

        c.      The Banc of America Funding 2007-4 Trust was sponsored by Defendant and co-conspirator Bank of America, N.A.  The Master Servicer of this financial derivative instrument is Defendant and co-conspirator Wells Fargo Bank, N.A.  GMAC Mortgage, L.L.C. is also among the servicers.  The originators of the loans pooled in this instrument include Defendants and co-conspirators GMAC Mortgage, L.L.C., Countrywide Home Loans, Inc., Wells Fargo Bank, N.A., Bank of America, N.A., National City Mortgage Co.

        d.      The Banc of America Funding 2007-4 Trust was sponsored by Defendant and co-conspirator Bank of America, N.A.  The Master Servicer of this financial derivative instrument is Defendant and co-conspirator Wells Fargo Bank, N.A.  GMAC Mortgage, L.L.C. is also among the servicers.  The originators of the loans pooled in this instrument include Defendants and co-conspirators GMAC Mortgage, L.L.C., Countrywide Home Loans, Inc., Wells Fargo Bank, N.A., Bank of America, N.A., National City Mortgage Co.  The Banc of America Funding 2007-7 Trust hired Defendants and co-conspirators Bank of America, N.A., CitiMortgage, Inc., GMAC Mortgage, LLC, and National City Mortgage Co. as servicers.

        e.      National City Mortgage Corporation is an originator and servicer of loans in the GSAA Home Equity Trust Series 2007-8.  Wells Fargo Bank, N.A. is also a servicer.  In the prospectus, National City Mortgage is described as a division of National City Bank.

        f.      In the Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2007-6, Defendant GE Money Bank was one of the major underwriters of the loans which were pooled.  U.S. Bank, N.A. was also an originator of loans in

the pool.  U.S. Bank, N.A. is also a servicer.  Wells Fargo Bank, N.A. was hired as one of the custodians of the trust.

g.      Defendant and co-conspirator Wells Fargo Bank, N.A. is the master servicer of the HSI Asset Loan Obligation Trust 2007-2.  18% of the mortgages in that loan pool were originated by Defendant Countrywide Home Loans, Inc.  26% of the mortgages in that pool originated from HSBC Mortgage Corporation (USA).   HSBC Mortgage Corporation (USA) profited from packaging its loans together with those of Defendant and co-conspirator Countrywide Home Loans, Inc.

h.      In the J.P. Morgan Alternative Loan Trust 2007-A2, J.P. Morgan Chase Bank was an originator of loans which were pooled.   JPMorgan Chase Bank, National Association is one of the servicers of the mortgage pool.  Wells Fargo Bank, N.A. is the master servicer.  U.S. Bank National Association is the trustee.  Countrywide Home Loans, Inc. sold loans to the trust.  JPMorgan Chase Bank is one of the servicers.

232.    Upon information and belief, Plaintiffs' loans were securitized, "sliced and diced" and pooled into mortgage pools such as the ones described herein as part of the conspiracy related to the creation and operation of the MERS system, and Defendants, and each of them, profited from same and are liable for their acts and the acts of their co-conspirators in creating the MERS system, including, but not limited to, the use of MERS-approved and created documents to establish the loans (including, but not limited to, the form of deed of trust), and in participating in the securitization process described herein.

233.    Upon information and belief, Defendant conspirators utilized funds received as part of the Troubled Asset Relief Program payouts to further the conspiracy to defraud Plaintiffs, and others similarly situated, to deprive them of their money, to deprive them of their property, to

unlawfully foreclose on loans made to putative class members, to pay investors in the mortgage-backed securities which were comprised of the loans made to Plaintiffs and others similarly situated, and to pay bonuses to employees and officers of the Defendant conspirators based on their devising the subprime mortgage-backed products which were securitized by loans of the type issued to Plaintiffs and others similarly situated, and collateralizing and selling such products in the United States and abroad.

234.    As a result of Defendant conspirators' conspiracy described herein, Plaintiffs have suffered injuries which include mental anguish, emotional distress, embarrassment, humiliation, loss of reputation and a decreased credit rating which has, or will, impair Plaintiffs' ability to obtain credit at a more favorable rate than before the decrease in credit rating, the loss or anticipated loss of their Residences and other financial losses according to proof, and Plaintiffs have incurred attorneys' fees and costs in this matter.

235.    Defendant conspirators' actions were wanton, willful and reckless, and justify an award of punitive damages against Defendant conspirators, and each of them.

## SEVENTH CLAIM FOR RELIEF

### (Conspiracy to Commit Wrongful Foreclosure Related to the MERS System)

**(As to all Plaintiffs Against Defendants MERSCORP, Inc., MERS, Inc., Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Bank, U.S.A., Wells Fargo Bank, N.A., GE Money Bank, Bank of America, N.A., PNC Financial Services Group, Inc., National City Corporation, National City Bank, T.D. Service Company, Deutsche Bank National Trust Company, Ocwen Loan Servicing, LLC, Litton Loan Servicing, United Guaranty Corporation and WMC Mortgage Corp.)**

236.    Plaintiffs incorporate by this reference each and every paragraph of this Complaint as if set forth fully herein.

237.   Upon information and belief, Defendants MERSCORP, Inc., MERS, Inc., Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Bank, U.S.A., Wells Fargo Bank, N.A., GE Money Bank, Bank of America, N.A., United Guaranty Corporation, PNC Financial Services Group, Inc., National City Corporation, National City Bank, T.D. Service Company, Deutsche Bank National Trust Company, Ocwen Loan Servicing, LLC, Litton Loan Servicing, and WMC Mortgage Corp. (hereinafter in this Seventh Claim for Relief collectively referred to for purposes of this Seventh Claim as the "Defendant conspirators"), and each of them, on a date known to Defendants, and estimated by Plaintiffs to have occurred by or before October 18, 2004 and continuing through the present, did knowingly and willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate and actively engage in wrongful foreclosures perpetrated on Plaintiffs as alleged herein and the actions of the Defendant conspirators were taken as part of the business policies and practices of each Defendant conspirator in participating in the MERS system.

238.   The MERS system was known by Defendant co-conspirators as being used by the Defendant co-conspirators named herein to facilitate the wrongful foreclosures complained of herein.

239.   Specifically, the MERS system was designed to remove the need for recordation of transfers of deeds of trust as alleged herein.  This component of the design of the MERS System facilitated the wrongful foreclosures complained of herein by making it easier to transfer the purported beneficial interest in a deed of trust and to appoint a trustee for the purpose of foreclosing on a property, despite the fact that the deed of trust no longer provided security for a note as a result of the note having been separated from the deed of trust as alleged herein.

240. The MERS system does not track the transfer of the note.

241. The MERS system does not track the identity of the holder of the note.

242. Upon information and belief, the Defendant conspirators are or have been creators and/or directors of MERSCORP, Inc., MERS, Inc. and/or members of the MERS system, and, as to Defendant conspirators, Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, and J.P. Morgan Chase Bank, N.A., have, through their employees and agents, served as members of the Board of Directors of MERSCORP, Inc. and/or MERS, Inc., and participated in the design and coordination of the MERS system described in this complaint.

243. Defendants' participation as shareholders, directors, operators, or members of MERSCORP, Inc. and/or MERS, Inc. are as follows:

a. Defendants J.P. Morgan Chase Bank, CitiMortgage, Inc., Countrywide Home Loans, Inc., Fannie Mae, Freddie Mac, United Guaranty Corporation, and Wells Fargo Bank, N.A. are each Shareholders of MERSCORP, Inc.

b. MERSCORP, Inc. is the operating company that owns and operates the MERS System described herein, and is the parent company of Mortgage Electronic Registration Systems, Inc. ("MERS, Inc.").

c. Defendants Freddie Mac, MERSCORP, Inc., National City Mortgage, Fannie MAE, and United Guaranty Corporation are directors of MERS, Inc. and/or MERSCORP, Inc.

d. Defendants Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, National City Bank, National City Corporation, PNC Financial Services Group, J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Bank, U.S.A., GE Money Bank, Bank of America, N.A., Wells Fargo Bank, N.A., United Guaranty

Corporation, T.D. Service Company, Deutsche Bank National Trust Company, Ocwen Loan

Servicing, LLC, Litton Loan Servicing, and WMC Mortgage Corp. are Members of MERS, Inc.

244.    Whenever this Complaint refers to any corporation's act, deed, or transaction, it

means that such corporation engaged in the act, deed, or transaction by or through its members,

officers, directors, agents, employees, or other representatives while they actively were engaged in

the creation, management, direction, control, or transaction of its business or affairs.

### EIGHTH CLAIM FOR RELIEF
### (Injunctive Relief)

245.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set

forth in this claim.

246.    All Plaintiffs, and others similarly situated, except Plaintiffs Tierney and Tulip, are

faced with foreclosure on their homes and/or eviction from their homes as allege herein.

247.    Plaintiffs, and others similarly situated, have no adequate remedy at law to stop

these unlawful foreclosures and evictions.

248.    The Plaintiffs, and others similarly situated, will suffer irreparable harm from the

loss of their homes and the Defendants will suffer nothing because no payments are owed to them

on account of the notes and mortgages and any foreclosure pursued by them will be and is and has

been unlawful.

### NINTH CLAIM FOR RELIEF
### (Declaratory Relief)

249.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set

forth in this claim.

250.    As alleged in Plaintiffs' claims regarding the Defendants' violations of state laws

related to the loans at issue, the Defendants have violated Plaintiffs' rights under state law.

251.    The Defendants have proceeded with foreclosures against the Plaintiffs or threatened foreclosures against the Plaintiffs for which the Defendants are not owed any payments, have no lawful right to foreclose and have unlawfully deprived or attempted to deprive the Plaintiffs of their homes.

252.    Plaintiffs seek a declaratory judgment against Defendants stating that Defendants have violated Plaintiffs' rights under state laws as alleged above.

253.    Plaintiffs also seek a declaratory judgment finding that their loans were transferred out of the MERS system, and requiring the de-listing of their loans from the MERS system as required by the rules governing the MERS system.

254.    Plaintiffs have been required to retain counsel in this matter to protect Plaintiffs' rights and has incurred attorneys' fees and costs in this matter.

## CLASS ACTION ALLEGATIONS AND
## REQUEST FOR CLASS CERTIFICATION

255.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

### Class Definition

256.    Plaintiffs, pursuant to Fed. R. Civ. P. 23(a), (b)(2-3), bring this action for themselves and on behalf of a class of persons similarly situated under the provisions of Federal and State law regarding plaintiff class actions.

257.    The class is composed of the named Plaintiffs and all others in Nevada and the United States whose residential real estate loans were originated, funded, serviced, securitized, sold, transferred, insured, or guaranteed by the Defendants between 2004 and 2008, and who were damaged or who are faced with risk of damage by the origination, servicing, sale, transfer,

foreclosure, and/or acquisition of such loans. Excluded from the class are the Defendants, including any parent, subsidiary, affiliate or controlled person of the Defendants and their officers, directors, agents or employees, any judge or judicial officer assigned to this matter, and members of the immediate families of any excluded persons.

Numerosity

258.    Upon information and belief, Plaintiffs estimate that the class comprises not less than 125 individual members and the class is so numerous that joinder of all members is impracticable.  The members of the class can be identified and located using information contained in the Defendants' mortgage lending records.

Common Questions of Law and/or Fact

259.    There are common questions of law and/or fact common to the class, including whether the Defendants violated the Federal Fair Housing Act and the Nevada Uniform Lending Practices Act as alleged herein, whether any such violations constituted a conspiracy to commit fraud or conversion, unjust enrichment, and/or whether Defendant's conduct constitutes intentional infliction of emotional distress on the class members.  Also common to the class is the issue of whether the named Defendants acted as conspirators in committing fraud in creating the MERS system as alleged in the Conspiracy to Commit Fraud Related to the MERS System Claim for Relief and whether the Defendants acted as conspirators in the use of the MERS system to commit wrongful foreclosure.

Typicality

260.    Plaintiffs' claims are typical of those of the members of the class.  Plaintiffs and the class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the class members are based on the same legal theories.

<u>Fair and Adequate Representation of Class</u>

261.    Plaintiffs will fairly and adequately protect the interests of the class Plaintiffs represent.  Plaintiffs' interests do not conflict with the interests of the class, and Plaintiffs intend on prosecuting this action vigorously.

262.    Plaintiffs have retained experienced counsel qualified in class litigation and counsel and is competent to assert the interests of the class.

<u>Rule 23(b) Requirements</u>

263.    The unlawful acts of Defendants, as alleged herein, constitute a course of conduct common to Plaintiffs and each class member.  Prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of the individual class members to protect their interests.

264.    Injunctive and/or declaratory relief to the class is appropriate because, upon information and belief, Defendants, and each of them, have acted or refused to act on grounds generally applicable to the class.

265.    Questions of law and/or fact common to the class members, including the issues identified above, predominate over questions affecting only individual class members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated individuals to simultaneously pursue their common claims in a single forum in an efficient manner, without unnecessary duplication of effort and expense that would be required if numerous individual actions were pursued.

WHEREFORE, Plaintiffs pray this court enter an order providing relief as follows:

1.      For an award of damages against Defendants, and each of them, on the Plaintiffs' state law claims, whether general, special or punitive as alleged above, in an amount to be shown at trial;

2.      For an award of attorneys' fees and costs as provided by law;

3.      For an order of rescission on behalf of named Plaintiffs;

4.      For an order of restitution on behalf of Plaintiff and class members;

5.      For a temporary restraining order and preliminary and permanent injunction prohibiting any foreclosure action or eviction action as to any of the Plaintiffs' residences and/or proceeding with any collection action against the Plaintiffs, and from transferring any interest and/or proceeding with foreclosure actions against the residences of similarly situated class members;

6.      For a declaratory judgment holding that Plaintiffs' rights were violated as alleged above and de-listing the Plaintiffs' loans from the MERS system;

7.      That Plaintiffs have and recover from the Defendants pre-judgment interest as may be determined by statute and rule;

8.      That this action be certified as a Plaintiffs' class action;

9.      Pursuant to Federal Rules of Civil Procedure, Rule 38, Plaintiffs demand a trial by jury on all issues of fact in this action; and

10.     That this Court grant such other and further relief as it deems just and proper.


DATED:  January 29, 2010                    HAGER & HEARNE

                                            /s/ Robert R. Hager, Esq.
                                            Robert R. Hager, Esq.
                                            Treva J. Hearne, Esq.
                                            Attorneys for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury to the fullest extent permitted by law.


DATED:   January 29, 2010                    HAGER & HEARNE

*/s/ Robert R. Hager, Esq.*
Robert R. Hager
Treva J. Hearne
Attorneys for Plaintiffs